WILLIAM S. HARKLEROAD *v.* KATE BASS ET AL.

1. WILLS. *Construction. Technical words. Heirs. Presumption.*

    If it be apparent from a will that the testator used the word "heirs" in a different sense, the presumption that he used it in its technical sense will not prevail.

2. SAME. *Case.*

    Where the manifest object of the will was to provide for the testator's infant son, and it gave him lands for life and provided "should he leave any lawful issue at his death then I will to his heirs forever, and should (he) die without heirs" the lands were to go to testator's grand-niece, the word "heirs" was used in the sense of "lawful issue," and upon the death of the son without issue the grand-niece took the estate.

FROM the chancery court of DeSoto county.

HON. JULIAN C. WILSON, Chancellor.

Harkleroad, appellant, was complainant, and Mrs. Bass and others, appellees, defendants in the court below. From a decree in defendants' favor complainant appealed to the supreme court.

Complainant claimed under the will of Hiram S. Harkleroad, deceased, which is made an exhibit to the bill, as the heir at law and next of kin to Daniel S. Harkleroad, deceased, son of Hiram S. Harkleroad, the deceased testator. Such parts of the bill and so much of the will as is necessary for an understanding of the case are set out in the opinion of the court.

The defendants demurred to the bill, and the demurrer was sustained and the bill dismissed.

*Finlay & Finlay,* for appellant.

It is obvious that the primary object of the will was to provide for the care and education of the testator's young son and to regulate his rearing and education as much as possible. Having accomplished his purpose, it was but natural that the testator should provide that at the death of Daniel his lands should descend as the law of the land provides, for that is the effect of the twelfth item, unless we read into it a meaning different from that imported by the words used.

The word "heirs" is used five times in this will, four times in the twelfth clause and once in the fifth clause. It is perfectly obvious that in the fifth clause the testator did not use the term to designate children of descendants, but used it in its legal sense. He directs that the one hundred and twenty acres devised to Mrs. Williams shall at her death go to Kate Williams and to her heirs forever. In the twelfth clause the limitation over to Kate Williams is to her and to her heirs forever. Thus the testator in two instances out of five used the term in its technical sense and as a word of art.

There is nothing connected with the use of the word in the other three instances in the twelfth clause, and nothing in the context, which would indicate in the slightest degree that the testator used it in a different sense from the sense in which it is used in the other two instances. It therefore follows that the word is to be construed in its technical sense in each instance.

Mr. Jarman's XVII. General Rule of Construction, 3 Jarman on Wills, ch. 51, p. 707, is as follows:

"That words, occurring more than once in a will, shall be presumed to be always used in the same sense, unless a contrary intention appear by the context, or unless the words be applied to a different subject."

We therefore submit that, independently of other considerations, in the light of the other provisions of this will, and in view of the use of this term in other instances in the will, the words "lawful heirs" must be construed to mean, as claimed by the appellant, those entitled under the statute to succeed to the real estate of Daniel S. Harkleroad at his death, and not to mean his lineal descendants.

Mr. Jarman's XVIII. General Rule of Construction is: "That where a testator uses technical words, he is presumed to employ them in their legal sense unless the context clearly indicates to the contrary." 3 Jarman on Wills, ch. 31, p. 707.

The word "heir," when unexplained by the context, must be interpreted according to its strict legal import, in which sense it obviously designates the person or persons appointed by law to succeed to real estate in case of intestacy. 2 Jarman on Wills, 586; *Beers* v. *Narramore,* 61 Conn., 14; *Walsh* v. *McCutcheon,* 71 Conn., 283; *Gauch* v. *St. Louis, Etc., R. R. Co.,* 88 Ill., 252; *Carpenter* v. *Van Olinder,* 127 Ill., 42; *Putnam* v. *Gleason,* 99 Mass., 454; *Barber* v. *Pittsburg, Etc., R. R. Co.,* 166 U. S., 83.

"The proposition deducible from the authorities is that, *prima facie,* the word 'heir' is to be taken in its technical sense, unless there is in the will a plain demonstration that the testator used it in a different sense, in which case effect will be given to his intention." *Irvine* v. *Newlin,* 63 Miss., 192.


*Farley & Lauderdale, L. J. Farley,* and *Tim E. Cooper,* for appellees.

The contention of appellees is that the word "heirs" in the twelfth item of the will was used by the testator in the sense of children, or issue, and that said item should be construed as if written: "I give and bequeath to my son Daniel all my real estate, to have and to hold the same during his natural life, and should he have any lawful children at his death," etc.

This was the intention of the testator, as is clearly shown from a consideration of the whole will. The intention of the testator in construction of wills governs and must be ascertained by looking at and considering the whole will. *Vannerson* v. *Culbertson,* 10 Smed. & M., 150; *McGehee* v. *McGehee,* 74 Miss., 386; *Johnson* v. *Delome, Etc., Co.,* 77 Miss., 15.

It is well settled that the technical and legal meaning of words will not be considered when the clear intent of the testator, as shown by his will, was to give a different meaning to any particular word, like the word "heirs" in the twelfth item of this will. *Johnson* v. *Delome, Etc., Co.,* 77 Miss., 15; *Lusby* v. *Cobb,* 80 Miss., 715; *Baird* v. *Boucher,* 60 Miss., 326.

The common law rule, vesting title in the heirs by descent, will not apply in this case, because the will contains other provisions, with which that application would not consist. *Dunlap* v. *Fant,* 74 Miss., 197.

It has been held that words may be even rejected or may be restrained in their application in order to give effect to the intention of the testator. *Finlay* v. *King,* 3 Pet. (U. S.), 346, in which this language is used by Chief Justice Marshall: "But the intent of the testator is the cardinal rule in the construction of wills, and if that intent can be clearly perceived, and is not contrary to some positive rule of law, it must prevail, although in giving effect to it some words should be rejected or so restrained in their application as materially to change a literal meaning of the particular sentence."

One of the most frequent illustrations of these rules is found in the decisions of all the courts construing the words "heirs" and "lawful heirs" to mean children only, as clearly was the intention of the testator, Hiram S. Harkleroad, in his use of the words in this will.

"If a son should die without heirs of his own," has been held by the supreme court of the United States, in the case of *Abbott* v. *Essex Co.,* 18 How., 202, to mean lineal descendants or children. In *Davis* v. *Davis,* 39 N. J., Eq. 13, the words

"lawful heirs" were construed to mean legitimate children. And in *Eldridge* v. *Eldridge,* 3 Cen. Rep., 345 (41 N. J., 89): "That if clearly shown that the word 'heirs' was used as meaning children, the court will give it that meaning." So the word "heirs" may be read to mean children, if the context distinctly shows that it was employed in that sense by the testator, just as it does in this case.   *Allen* v. *Craft,* 7 W. R., 516; *Anthony* v. *Anthony,* 5 N. E. Rep., 41; *McCarthy* v. *Osburn,* 6 W. R., 793.

So, when a will provides to pay over to the widow if living $3,000, provided the son leaves no heirs, the word "heirs" means children.   *Anthony* v. *Anthony,* 5 N. E. Rep., 41 (2 Pick., 243, and 4 Pick., 198).

Argued orally by *Percy Finlay,* for appellant, and by *Tim E. Cooper,* for appellees.

TRULY, J., delivered the opinion of the court.

The twelfth clause of the last will and testament of Hiram S. Harkleroad is as follows: "12. I give and bequeath to my son Daniel all my real estate, to have and to hold the same during his natural life, and should he have any lawful issue at his death, then I will to his heirs forever, and should my son Daniel die without heirs, then in that case I will all my estate, both personal, mixed, and real, to my grand-niece, Kate Williams, and to her heirs forever." At the date of this will Daniel Harkleroad was an infant, about five years of age. He lived for some years after his father's death, and died unmarried and leaving no lawful issue. At his death the appellee, Kate Williams, now Bass, the grand-niece of Hiram S. Harkleroad named in the clause recited, entered into possession of the lands which the said Daniel took by devise from his father. At his death Daniel left surviving him the said Kate Williams, his cousin in the second degree, and nine first cousins, nieces and nephews of Hiram S. Harkleroad. This suit was instituted

by the said nephews and nieces, averring that, as the nearest of kin in degree to the said Daniel, they inherited to the exclusion of the said Kate Williams. The sole question presented for decision is as to the true interpretation of the twelfth clause of the will of Hiram S. Harkleroad.

Appellants, complainants below, contend that the devise of the estate of Kate Williams made by the said clause, in the event Daniel Harkleroad should die wthout heirs, is ineffective because the contemplated contingency did not arise; that the devisee of the life estate did not die without "heirs" in the legal signification of that term, and therefore the limitation over fails. So, appellants argue, they are the heirs at law of Daniel Harkleroad, and, as collaterals nearest in degree, they inherit to the exclusion of other kin more remote. This contention is predicated of the generally recognized rule of interpretation which is concisely and accurately stated by Campbell, J., in *Irvine* v. *Newlin,* 63 Miss., 196, where it is said: "The proposition deducible from the authorities is that, *prima facie,* the word 'heir' is to be taken in its technical sense, unless there is in the will a clear demonstration that the testator used it in a different sense, in which case effect will be given to his intention." This statement of the rule cannot be improved.

The inquiry for our determination is whether the testator intended to attach a special and different meaning to the term "heir" as used in this clause of his will. Unless such intention is manifest, it is presumed that the testator employed technical words in their legal sense. Jarman, Wills, vol. 3, p. 707. An examination of the will now being considered demonstrates that the main object which the testator sought to attain was to amply provide for his only son during his life. Several different provisions of the will evidence his great solicitude on this point. Having guarded the interests of his son Daniel, so far as human foresight enabled him, the testator then states what disposition he desires made of his estate after

the death of his son. His wishes are plainly set out in the
twelfth clause of his will: (1) He bequeaths to his son Dan-
iel all his real estate, "to have and to hold the same during
his natural life." (2) Should Daniel have "any lawful issue
at his death," the estate vests in "his heirs forever." (3)
Should Daniel die without "heirs," the estate is to go to his
grand-niece, Kate Williams, and her heirs forever. Subjected
to analysis, the clause demonstrates that the testator used the
term "heirs" to convey the meaning of "lawful issue." If,
says the testator, my son has "lawful issue" at his death, his
"heirs" shall inherit. What heirs? Manifestly the lawful
issue surviving him. If, however, the son dies without heirs
(described in the preceding sentence of the same clause as
"lawful issue"), then the grand-niece of the testator and her
heirs inherit. No other construction will harmonize the sev-
eral distinct provisions of the clause. To our minds the con-
clusion is inescapable that this clause devised a life estate in
the lands to Daniel, with a limitation over to the heirs of his
body who, lawfully begotten, might survive him, and in default
thereof to Kate Williams and her heirs forever. That this
was the real intention of the testator is demonstrated by the
text of the will.

The unsoundness of appellant's contention that the word
"heir," in the connection now being considered, is to be given
its technical, legal meaning, becomes the more apparent when
it is noted that the devisee of reversionary interest after the
termination of the life estate was herself an "heir," in the legal
sense of that term, to the holder of the life estate. If Daniel
died without "heirs," Kate Williams was to inherit. But, if
appellant's interpretation be correct, Daniel could not possibly
die without heirs so long as Kate Williams lived, for she was
herself an heir, in that sense, both to Hiram and Daniel.
Hence to adopt the construction urged by appellant would be
to render the clause contradictory within itself and inoperative;
whereas, if the term be interpreted in the light of the context,

it effectuates the intention and desire of the testator, and vests the estate in the person expressly selected and named in the will. That this conclusion is in accordance with the almost universal current of decision, see the careful, full, and discriminating citation of authorities in the excellent brief for appellees.

*The decree is affirmed.*