BENJAMIN H. MACE, *petitioner, appellant, versus* JABEZ CUSH-MAN, *administrator.*

The provision of c. 93, § 16 of R. S. of 1841, by which the husband of one who died intestate was entitled to the residue of her personal property, after the payment of her debts, &c., was not intended to be repealed by the Act of 1848, c. 73, which provides that the real and personal estate of a married woman, who shall die intestate, shall descend or be distributed to her *heirs.*

APPEAL from the decision of the judge of probate for the county of Cumberland.

The petitioner, from the year 1812 to the time of her death in 1855, was the husband of Betsey Mace, who died intestate and childless, (never having had any issue.) At the time of her decease, she was possessed of real and personal estate. There would remain in the hands of the respondent, on the settlement of his final account of administration, a balance exceeding the sum of $1000, which the husband claimed he was by law entitled to. The deceased left brothers and sisters surviving her.

On the petition of said husband, the administrator was cited before the judge of probate, to show cause why he should not settle his final account and pay over the balance that should remain in his hands, to the said petitioner. After hearing the parties, the judge of probate decided that, under the statutes of the State regulating the descent and distribution of intes-

tate estates, the petitioner is not entitled to any share of said intestate's estate, either real or personal, and ordered that the petition be dismissed. From which decision and ruling, the petitioner appealed.

The case is presented for the determination of the full Court, upon an agreed *statement of facts,* which facts, so far as they are material, have already been stated.

*S. & D. W. Fessenden,* argued for the appellant: —

The person to whom the property, real or personal, goes, at the decease of the owner, is designated by statute; and such person is in law denominated the heir. 1 Coke Lit. c. 6, title Descents, 237, A. And, by the civil law of descents, he is heir, to whom the lands, by law, are appointed to descend.

The law of descents, in this State, is the creature of, and is regulated by statute. R. S. of 1841, c. 93. It is obvious, from a collective view of these provisions of the statute, that it is the positive enactment of the law, by which the descent of estates, in this State, is regulated. Who are, or shall be heirs, depends wholly on the statute and not on the common law. Or, in other terms, he or she is heir of the intestate to whom, by statute, the estate is made to descend from the deceased intestate.

If the provisions of § § 15 and 16, of c. 93, were in force at the time of the wife's decease, it will not be contended that the petitioner is not entitled to the personal estate remaining after the payment of debts. He is the *heir* of his wife, according to the authorities cited, and, by the statute itself, he is heir to whom the property descends.

A law that would take a wife's property, and, for lack of children, distribute it among her brothers and sisters and their descendants, to the exclusion of the living husband, where she had failed to make a will, would be absurd and wicked, a violation of the principles of natural justice, and an outrage on the laws of our nature. The law under which the petitioner claims is so consonant to the genius of our institutions, that it would be difficult to make a sensible man, a man

participating in the common feelings of our common nature, believe that any Legislature of our State would deliberately repeal it, and give a direction to the estate of a deceased wife, under the circumstances in the statute supposed, from the husband to the brothers and sisters of the wife. A Legislature that would enact such a law, by repealing the existing law, would surely use express terms to accomplish the object. No such words of repeal are to be found, and it is only by implication that it can be contended that the 16th § of c. 93 is repealed.

No one would ever suppose, on reading the title of the Act of 1848, c. 73, "An Act in addition to an Act entitled an Act to secure to married women their rights to property," that the Legislature were, under such a title, about to pass a law changing the descent of a married woman's property; and create for her a new heir, in case she should decease without making a will. It is difficult to perceive how the third section of that Act could make her rights more secure than they were by the law as it stood.

Who are the heirs of a married woman, situated as the intestate was at the time of her decease ? She was the lawful wife of the petitioner. She had no parent, no child living. She never was the mother of a living child.

By the common law, a man cannot be heir to goods and chattels. 3 Jacob's Law Dic., title Heir, p. 244. It is real estate alone to which a person may come into possession as heir, at common law, if indeed there be such a person as heir, at common law.

By our statute of descents, we have more nearly followed the rules of the civil law. An heir by the civil law is defined by Jacob, before cited. We make him heir of personal estate, on whom the law casts the inheritance of it. The husband is made heir by the 16th section of the statute of descents. "If the intestate were a married woman, the husband shall be entitled to the whole of such residue," makes the husband, *ipso facto*, heir, (and sole heir,) of the wife. That section

stands unrepealed.    The statute of 1848 must, and should be construed to be in affirmance of it.

The statute of 1848 should not be considered a repeal of the former statute, by implication.   It is a legal maxim that the law does not favor a repeal by implication, nor is it to be allowed, unless the repugnancy be plain.    4 Bacon, title Statute D., 637; 10 Mod. 118.

*J. C. Woodman*, for the respondent, contended: —

That the law of 1841 was repealed by the law of 1848, c. 73, § 3.    This provides that "when any married woman shall die intestate, seized or possessed of any property, real or personal, in her own name, exempt from the debts or contracts of her husband, the same shall descend or be distributed to her heirs."    This is the law which was in full force at the time of the death.   By this Act the personal property is to be distributed to, or among the heirs, and any thing in the R. S. of 1841 to the contrary is repealed.

If this clause did not repeal the 16th § of the 93d c. of R. S., of 1841, then it did not change the law in any respect. The first rule of interpretation is to construe a statute, so that it shall have some force, make some change in the law. As this statute did not change the law in any other respect, clearly it repealed the section in the statute of 1841 on which the petitioner relies.

The language is technical and precise.    It provides for the disposal of the deceased's whole property, and that in critical and precise language.    It provides that her real estate "shall descend to her heirs;" and that her personal estate "shall be distributed to her heirs," that is, to the same persons.    Those to whom the personal property is to be distributed do not take it as heirs.    Personal property belongs to the administrator.    But the meaning is, that the administrator shall distribute the personal property to the same persons, who are *heirs*, and those are the persons to whom the real estate descends by law.    The use of the word *"distribute"* clearly shows that it was not intended to give the

whole personal property to the husband. The word "distribute" implies that the administrator is to divide it. The word " heirs," which is plural, implies the same thing. And the phrase signifies that the administrator is to divide the personal property, proportionately, among those persons who are heirs, namely, those who are entitled to the real estate. If it was intended to give the whole personal property to the husband, as formerly, it would have been clearly and distinctly done by using the language of the 16th § in the statute of 1841; "the husband shall be entitled to the whole of such residue," or the whole of the personal property. Then there could have been no mistake. But, if that was the purpose, there was no occasion to enact this clause at all. The mere fact of enacting it shows an intention to change the law, and that change must have been to withdraw the personal estate from the husband, for it could be nothing else.

Again, so much of the deceased's property as was not "exempt from the debts and contracts of the husband" was not to be distributed. What was that? And why was this exception? The husband was authorized to convey property directly to his wife. Statute 1844, c. 117, § 1; Stat. 1847, c. 27; Johnson v. Stillings, 35 Maine, 457. And when property comes to the wife from the husband without a full and adequate consideration, it is not "exempt from the debts or contracts of the husband." Being subject to the debts and contracts of the husband, it was provided in the clause of the statute of 1848, c. 73, § 3, under examination, that it should not be distributed among the heirs of the wife, where the husband's creditors might never be able to reach it. But, if the meaning of the statute was to give all the personal property to the husband, there would have been no propriety in making such an exception, and it would not have been made. When it was all paid to the husband, his creditors might readily reach it all.

The fact that the statute of 1841, c. 93, § 16, provided that the husband should be entitled to the whole of the wife's personal property; and that, in the statute of 1848, c. 73, § 3,

new words are used, and provision is made that the personal property "shall be distributed to her heirs," shows that the husband was not intended, but other persons under the term *heirs.*

The same is also shown, as the sense of the Legislature, by statute 1856, c. 251, which authorizes the judge of probate to allow, in the account of the administrator of a deceased married woman, all reasonable expenses paid by him to the husband on account of the last sickness of the deceased.

If the law already provided that the husband should be entitled to all the personal property, why should the administrator be authorized to pay him the expenses of his wife's last sickness?

But who are the heirs of a married woman? How shall they be ascertained? And what do her heirs inherit? The petitioner's counsel insists that the petitioner is meant, by the "heirs" of Mrs. Mace; that he inherits her personal property; and that he ascertains this by the statute of 1841, c. 93. We say that heirship or inheritance is confined to real estate; that personal property is not the subject of heirship; that the heirs of a married woman are her children; and, if she has no children, then her lineal descendants; and, if she has no lineal descendants, then her father; and, if she leave no children, lineal descendants, nor father, then her brothers and sisters, and the children of any deceased brother or sister, by right of representation, are her heirs; and that we ascertain this by reference to the common law, and that the statute of 1841 is to the same effect.

According to the doctrine of the petitioner, if the deceased had left children, they could not take this personal property, notwithstanding the statute expressly declares that it shall be distributed to "her heirs." The husband would take it under that title rather than the children of her own body!

There is no express definition of the word *heirs* in the statute of 1841. It is often the case that legal terms are used in statutes which are well understood, and of common occurrence in books upon common law. We then resort to

those books upon common law, in the same manner as we resort to books upon any other science, to ascertain the meaning of technical terms in that science. This is the case with the word *heirs.* By referring to books upon the common law, we find that none can be heirs except those who are related by blood, and so descended from a common ancestor with the deceased. 3 Starkie's Ev. 1099, title "Pedigree;" also, on the same page, note *e, Richards* v. *Richards,* B. R. E., 4 Geo. II., Ford's MSS.; *Doe* v. *Griffith,* 15 East, 293; 2 Black. Com. 177, 241. The ancestor during his life beareth in himself all his heirs. 2 Bl. Com. 242, citing Co. Litt. 22. It is represented, in Blackstone, that an inheritance is that which a man acquires by right of blood by descent from any of his ancestors or kindred. Now, inheritance is what a person receives by heirship. Therefore, the heirs are those who are related by blood or consanguinity in the nearest degree.

Again, nothing is the subject of heirship or inheritance except real estate. Personal property is not the subject of inheritance. 2 Black. Com. 201; The titles to c. VII. VIII. II. and III. And, beginning at the second chapter, the whole of the second volume of Blackstone's Commentaries treats of real estate, and here only does he discuss the law of descent and heirship, because personal property is not the subject of inheritance. One may, by will, give his property to his legal heirs. In such case, they do not take it as heirs, but take as purchasers under his will. But for the will, this personal property would belong to his executor, and, even under his will, a specific legacy will not vest in the legatee till the executor agrees to it. 1 Story's Eq. § 542. So a man, who had his father's estate settled upon him in tail before he was born, is a purchaser, for he takes quite another title than the law would have given him. 2 Black. Com. 241. He is an heir, because he is the nearest related by blood, a son. But he does not take as an heir. So with this personal property. Nobody takes it as an heir, for personal property is not an inheritance, is not the subject of heirship. But the heirs are the nearest of kindred by blood,

those who inherit the real estate; and they have a right to this personal property, because the statute directs the administrator to *distribute* it, or, in other words, to divide it proportionately among them.

In order to establish these points further; that personal property is not the subject of heirship; that heirship is confined exclusively to real estate; and that none are heirs except those who have descended from a common ancestor with the deceased, and so related by blood, we further cite 2 Black. Com. 17, 18, 202, 203, 204, 208, 212, 214, 220, 224 and 234. Here the counsel on the other side objects, that we cannot define the word *heirs* by the common law; because, if we do, the right of primogeniture will prevail, and the females will be postponed, both of which are contrary to the policy of our law. We argue that these rules are contrary to the policy of our law, and they are contrary to our law in fact. The law to which we look is the common law of America, and not the common law of England alone. Since the Revolution the common law has been very much modified in America. We have no King. Prosecutions for offences under the common law proceed in the name of the people or the State. The wife is not dowable of wild lands. The right of primogeniture is gone; and there is no preference for the male over the female. This is the common law of America.

Mr. Dane, in his Abridgment, after giving the rules of descent according to the English common law, says, "Our law does not require the intestate to be actually seized; and, in some cases, the father inherits as next of kin, as was the case in the Jewish and Roman laws; and so the mother and other lineal ascending ancestors. Nor does our law make any distinction between males and females, nor between the whole and half blood; nor between paternal and maternal relations * *. Our law gives the males and females, each, an equal share, in an equal degree." 4 Dane's Abridg't, c. 125, art. 4, § 5.

On the same subject I refer to 4 Kent's Com. 371, 374, 378, 379, 386, 389 and 396.

Mace *v.* Cushman.

On page 386 he says, "these common law doctrines of descent, (by primogeniture and to the exclusion of females,) are considered incompatible with that equality of right and that universal participation in civil privileges which it is the constitutional policy of this country to preserve and inculcate. The reasons which led to the introduction of the law of primogeniture and preference of males ceased to operate, upon the decline and fall of the feudal system, and those stern features of aristocracy are now vindicated by English statesmen upon totally different principles." 4 Kent's Com. 378.

On page .396 of his fourth volume, Judge Kent gives the fourth canon thus:—"If the intestate dies without issue or parents, the estate goes to his brothers and sisters and their representatives." This is the common law in America, generally, and in Massachusetts and Maine particularly, as I understand it. According to this law, the heirs of Mrs. Mace were her brothers and sisters. But, at all events, the whole doctrine of heirship and descent, relates to real estate only. The real estate is the inheritance. The personal estate goes to the executor, and is the fund for the payment of debts, legacies and expenses of administration. The personal estate does not descend at all, but, if there shall be any surplus after the payment of debts, it is to be distributed, not according to heirship in all cases, but according to certain arbitrary rules provided in the statutes. This is according to all the books and all the statutes. It is according to Blackstone, Dane, and Kent, and all the cases.

Hence, it was formerly often a question, and sometimes is even now a question, whether a thing belongs to the heirs or to the excutor. The question turns on the character of the thing. If it is real estate, it goes immediately to the heirs, and they may dispose of it forthwith, subject to the contingency of its being wanted for the payment of the debts of the deceased. But, if it is personal property, it belongs to the executor for the purpose of administration. Whatever descends to the heirs, passes instantly to them, and does not pass through the administrator's hands. But personal pro-

perty cannot pass directly to the distributees, but can only go through the hands of the administrator by distribution. If it could pass to them as heirs, it would come to them directly, on the death, like real estate, and not from the administrator by distribution. The husband did not take the residue of his wife's personal property as an heir under R. S. of 1841, c. 93, § 16, because he could only receive it after administration, and from the hands of the administrator. So, in no proper sense, could he be considered as the heir of his wife under that section 16. So the petitioner could not have been an heir to his wife's personal property under the statute of 1841. Much less can he be her heir under statute of 1848, c. 73, § 3.

To show further that heirship relates wholly to real estate, and cannot be of personal property, I refer to a few cases. *Lawrence* v. *Wright & al.*, 23 Pick. 129; *Gibson* v. *Farley & al.*, 16 Mass. 285, 287; *Foster* v. *Gorton*, 5 Pick. 185.

We have gone to the American common law for the meaning of *heirs*, but if we look into the statute of 1841, c. 93, we find it must have the same meaning; that it can only refer to those who are descended from a common ancestor and so related by blood; and that the heirs are those, and those only, who take the real estate. § § 1 – 6. 1 Bl. Com. 458, 459.

But it is said that the word *heirs* is used in a popular sense, and so means the husband, because he was entitled to the residue of the personal estate, under statute of 1841, c. 93, § 16. This cannot be, for all the reasons before given. It cannot be, for we know of no popular sense which would make the husband of a married woman her " heirs," and give him property to the exclusion of her children. It cannot be, for the language is clearly used in a technical sense. It is said the real estate is " to descend," and the personal property " to be distributed." It cannot be, because, clearly, the real estate and personal property are to go to the same persons under the name " heirs." It cannot be, because the brothers and sisters are made heirs, and take the real estate, both by the American common law, and the R. S. of 1841, c. 93, § 2; and so they must take the real estate by descent under statute of

1848, c. 73, § 3, and the personal estate by distribution, under the same section.

The opinion of the Court was drawn up by

HATHAWAY, J.—An appeal from a decree of the judge of probate, disallowing the claim of the appellant to the personal estate, which was of his wife Betsey Mace, who deceased intestate, Sept. 19, 1855, never having had a child, but leaving brothers and sisters alive.

Chapter 93 of R. S. of 1841, entitled, " of title by descent," after having designated to whom, and in what proportions the *real* estate of persons deceased intestate, should descend, enacted in the fifteenth section, that, after the payment of the debts of the intestate, and the charges of his funeral, and settlement of his estate out of the personal estate, " the residue shall be distributed to the same persons in the same proportions, to whom the real estate should descend, subject to sundry provisions specified in subsequent sections, one of which, section 16, is, " if the intestate were a married woman, the husband shall be entitled to the whole of said residue." The question presented is, substantially, whether or not this section of the statute was repealed by the third section of the statute of 1848, c. 73, entitled " An Act in addition to an Act to secure to married women their rights of property," which provided that, " when any married woman shall die intestate, seized or possessed of any property, real or personal, in her own name, exempt from the debts or contracts of her husband, the same shall descend or be distributed to her heirs."

That section was not a repeal of the former Act, unless by implication. A construction which repeals a former statute, by implication, is not to be favored in any case.

Statutes are not considered to be repealed by implication, unless the repugnancy between the new provisions and a former statute be plain and unavoidable. 1 Kent's Com. 524, (9th ed.,) note C.; *Com.* v. *Herrick,* 6 Cush. 465.

Technically, in the common law use of terms, in relation to

the estates of deceased persons, and those to whom such estates shall descend and be distributed, *heirs* are such, by kindred blood, they inherit real estate *only*, and *descent* is hereditary succession. But the descent and distribution of property, in this State, is regulated by statutes. There may be, and are persons who are made heirs by statute, who would not be heirs at common law. Hence, it is not remarkable that technical words, upon the subject of inheritance, should be occasionally used in statutes with a meaning not technically accurate, according to the rules of the common law.

The title of R. S. of 1841, c. 93, is " of title by descent," and its index to section 15, is, " how personal estate shall descend," and, yet, the subject of the statute is of title by decent and distribution, and, technically, title to personal estate does not come by descent, and, although the title of an Act and its preamble are, strictly speaking, no parts of the statute, yet, they may sometimes aid in the construction of it, and, to that end, in ascertaining the meaning in which technical words therein were used. But we can derive no such aid from the title of the statute of 1848, c. 73, for its title does not indicate that the statute embraces any such provision as is contained in the third section of the Act.

Legislators, in the statutes which they enact, frequently use technical words in their common and popular meaning.

In the common use of language, the children of a deceased intestate leaving personal property only, would be called his heirs, and such use of the term would be justified by the definitions of the word *heir*, by lexicographers, but, technically, they would not take the estate of the deceased, as heirs, they would take it as distributees, according to the rules established by the existing laws.

In the construction of statutes the intention of the lawgiver, when accurately ascertained, will prevail over the literal use of terms, and a statute is not to be construed according to technical rules, unless such be the apparent meaning of the Legislature. The general system of legislation upon the subject matter, and other statutes, in *pari materia*, may be con-

sidered, and when a statute is made in addition to another statute, upon the same subject, without repealing any part of it, the provisions of both must be construed together. 1 Kent's Com., (9th ed.,) 516 – 521, and notes; *Whitney* v. *Whitney*, 14 Mass. 92; *Holbrook* v. *Holbrook*, 1 Pick. 248; *Pease* v. *Whitney*, 5 Mass. 380.

The legislation upon this subject, before and after the statutes of 1848, does not favor the conclusion that the Legislature intended, by the third section of the Act of 1848, to repeal any part of the law then in force, concerning the descent and distribution of the estates of persons deceased intestate. By the word heirs, as used in that section, was evidently intended those persons who were entitled to the property of the deceased, according to the laws then in force. The same word with that meaning was adopted in the last revision of the statutes, in 1857, in which, c. 61, § 5, " when a married woman dies intestate, her property descends to her heirs," and in c. 75, § 9, if the intestate "leaves a widow and issue, the widow takes one-third, if no issue, one-half, and if no kindred, the whole; and the widower shall have the *same share* in the wife's estate." In these two contemporaneous Acts, it is certain that the word heirs, as used in c. 61, § 5, includes the "widower," named in c. 75, § 9, and there is no reason to doubt, that the same word was used in the same sense in the statute of 1848, c. 73, § 3. Nor is this any unusual meaning to attach to the word heirs. It has been often held that, to carry into effect the intentions of a testator, the word heirs may be construed to mean those entitled under statutes of distribution. *Morton* v. *Barrett*, 22 Maine, 264.

The fact that "the word heirs in the plural form" only, was used in the statute of 1848, is immaterial. There is no doubt that the estate, which was of a deceased person, and which, by law, goes to his heirs, if he leave but one heir, goes to that one; and, besides, by R. S. of 1841, concerning "the construction of statutes," "any word importing the plural number only, may be applied and confined to the singular number."

The appellant is entitled to the whole of the residue of the personal estate, which was of his deceased wife, according to the provisions of the R. S. of 1841, c. 93, § § 15 and 16, and the case must be remanded to the Probate Court for further proceedings. *Remanded to the Probate Court.*

TENNEY, C. J., MAY, GOODENOW, and DAVIS, J. J., concurred.