SARAH A. BOONE *v.* JASPER C. BAIRD.

[44 South., 929.]

DEEDS. *Construction. Estate conveyed. Heirs. "Revert."*

> Where a decedent, survived by a widow and son born of a previous marriage, had executed a deed conveying land to the surviving wife for life wherein it was provided that the land at her death should revert to his "heirs," the widow cannot take as heir and the son on the expiration of the life estate is entitled to the whole property, since the word "heirs," was not used in the deed in its technical sense but as meaning children.

FROM the chancery court of, first district, Hinds county.

HON. G. GARLAND LYDELL, chancellor.

Mrs. Boone, appellant, was complainant in the court below; Baird, the appellee, was defendant there. From a decree in defendant's favor the complainant appealed to the supreme court.

*Wells & Wells,* for appellant.

Not only did the deed to Drucilla Bradley convey a life estate to her but the effort to convey the balance of the fee not conveyed to Drucilla Bradley his wife by name, to the heirs of the grantor Robert Bradley was void and being void the life estate was increased by reason thereof to a fee simple title. We contend that a conveyance of real property to one's own heirs is void whether it be a conveyance of a fee simple title or of a portion of the fee.

We first cite the court to its adjudication of this point as found in *Harris* v. *McLaran,* 30 Miss., 533, and especially 569–570. Before reviewing that authority we pause to point out to the court the argument pressed on the lower court by the defendant that the words found in the deed to-wit " all estate title and interest both at law and equity of the party

of the first part in the same " used by old man Bradley operated to divest him of all title which he had; that is that it was the intention of old man Bradley to divest himself of his whole title. In which argument he is supported by *Caldwell* v. *Willis,* 57 Miss., 575, at bottom of page, where in exactly similar instrument the court held that such intention on the part of the grantor was " perfectly manifest."

If a reversion was created by operation of law by reason of the limitation over to Robert Bradley's heirs being void and thereby Drucilla Bradley's estate was not increased to a fee simple one, then that interest in reversion on the death of Robert Bradley being an estate of inheritance passed to his two heirs, Robert D. Bradley and Drucilla Bradley, in equal parts; and this case should be reversed and remanded with directions to the chancellor to proceed on that theory.

The remainder created by the deed was a contingent one which became a vested one immediately on the death of Robert Bradley; that is the remainder became vested in the heirs of Robert Bradley at his death and the heirs were Drucilla Bradley the life tenant and Robert D. Bradley the son.

We cite the court further in support of this proposition to the case of *McDaniel* v. *Allen,* 64 Miss., 417. We quote from the syllabus which is fully sustained by the opinion:

" In 1881 B died and by his will left his real estate to his wife for her life and on her death to be divided equally among the heirs of my (his) body. In 1882 J one of the children of B died. In 1883 the widow of B died. Held, that J took a vested remainder under the will; that the remainder was limited by the will to the heirs of the body of B surviving at his death, and not to those surviving at the death of the life tenant."

Now we submit that we have proved our proposition (that there is not a Mississippi authority opposed to this position taken by us that we could find) that at the time of the making of this deed by Robert Bradley to his wife that it was a settled

rule of property that the word " heirs " used in this way is a deed or will means the heirs at the death of the testator or grantor. Drucilla Bradley was presumed to have known the law as also old Mrs. Bradley and it is to be presumed that they had the deed drawn in accordance with that settled construction of the law which had become a law of property.

*Williamson, Wells & Peyton,* for appellee.

Appellant contends that the deed to Mrs. Drucilla Bradley was in violation of the statute against perpetuities, and that it conveyed a fee simple title to Drucilla Bradley instead of a life estate. We hardly think the court will consider this contention seriously. On the subject of Estates in Fee Tail, we quote section to the Mississippi Code of 1906:

" 2765. Estates in Fee Tail Prohibited. ' Estates in fee tail are prohibited; and every estate which, but for this statute would be an estate in fee tail, shall be an estate in fee simple; but any person may make a conveyance or devise of said lands to a succession of donees then living, not exceeding two, and to the heirs of the body of the remainderman of the donor in fee simple.' "

So under the terms of the statute a deed conveying property even to the heirs of the body of the remainderman would not be a limitation in violation of law. Much less would it be an illegal limitation after the termination of a particular estate to the heirs of the grantor, as in the case at bar. On this point we cite the court to the case of *Middlesex Banking Co.* v. *Field,* 84 Miss., 646, in which case the court held that the right heirs of the donor take by purchase and not by inheritance, and that the statute quoted above is to prescribe a limit of time beyond which the vesting of the estate cannot be suspended, but within the limit it permits the exercise of an unbounded discretion of the donor. That limit was not violated in the case at bar, but if the court has any doubt upon this point, we will ask the careful reading of the case cited above.

The second contention of counsel is that the remainder provided for in this deed, was a vested one, and that immediately upon the execution of the deed, Mrs. Bradley being the wife, and one of the legal heirs, a one-half remainder interest vested in her.   Upon this proposition we have this to say. Under the provisions of the deed in this case, the remainder did not vest until the termination of the life estate, because, clearly, by the deed itself, it was the intention of Robert Bradley that the interest which his wife, Drucilla Bradley, should have in said property was a life interest only, and that the remainder should vest and take effect at her death, and the title should then revert from the channel in which he had placed it by this deed for the natural life of his wife, from her heirs back to his heirs and that this vesting of the remainder should not happen until the event of her death.   Robert Bradley had no heirs until his death, as contended by counsel, and therefore Mrs. Bradley was not one of his heirs at the time of making the deed, and the vesting of the remainder interest did not occur until after her death.   Robert Bradley clearly, from all these circumstances that surrounded him, and the fact of his connection with his wife and only son, had in contemplation only these two persons, his wife and his son.   He gave to his wife a life estate and mentioned her no further.   He gave to his son Robert D. Bradley, or to any other heir he might have at the time of the death of Mrs. Drucilla Bradley, the remainder. He used the word " heirs " because perhaps at the time of his wife's death, his son Robert D. Bradley, might have died and left children living, who would be the heirs of their grandfather.   Robert Bradley never thought for a moment at the time he made that deed, nor did he intend for a moment that some distant relative, perhaps a third-cousin of his wife, Drucilla Bradley, would come in after her death and claim an interest in the property.   He thought and intended that it should go to his son Robert D. Bradley, or the heirs of his son who might be living at the time of the termination of this particular

estate.   In the case of *Harkleroad* v. *Bass,* 36 South., 537, the court holds that the word " heir " in a will is presumed to have been employed in its technical sense, unless there is in the will a clear demonstration that the testator used it in a different sense, in which case effect will be given to his intentions.

The rules for the construction of a will and a deed in this state are identical, as will be seen from the authorities following, viz.:   That the intention of the grantor should always be carried into effect.

The case of *Harris* v. *McLaren,* 30 Miss., has no application to the case at bar, for in this case it was the intention of the grantor, clearly expressed, that the remainder should not vest until the end of the estate, when it was his intention that the remainder should vest in his son Robert D. Bradley, whom he then had in his mind's eye, and he only used the expression " Heir " plainly as shown by the instrument and the surroundings, because his son Robert might have children living at the time of the termination of the particular estate that was given to his wife, and the term " heir " as used was synonymous with " children."

And now we come to the proposition that absolutely governs in this case and decides it for the defendant, and that is, that it was without a shadow of a doubt that in making this deed Robert Bradley intended to give his wife, Drucilla Bradley, an estate for ife, and that only, and to give to his son and only heir, Robert D. Bradley, the remainder after the life estate of his wife was terminated.   Take the language of the deed " By these presents does grant, bargain, sell and convey to the party of the second part (Mrs. Drucilla Bradley) during her natural life, and at her death to revert to my heirs."   You will note that he uses the word " Revert," in order to make his intention known as plainly as possible.   He does not say to go to my heirs, but to " revert," that is to revert from the artificial stream in which it was back to the natural stream, viz.: the heirs of the donor.   This was not a life estate to a stranger

with remainder to his heirs, but he only had two persons in mind, his wife and his son, and he determined at that time what estate he intended to give to each one. He conveyed to his wife an estate for life, so that she would be provided for during her lifetime and when her necessities were over for worldly goods, he gave to his son Robert the remainder interest. His son Robert was then living and his only child and to put his intention into that deed beyond all peradventure of a doubt, after describing the land, he reiterates "And all estate, title and interest both at law and in equity of the party of the first part in the same, to have and to hold the said granted premises with appurtenances unto the party of the second part (Mrs. Drucilla Bradley) during her natural life and at her death to revert to my heirs." Again using the same significant and expressive word "revert" to my heirs.

Argued orally by *W. Calvin Wells, Jr.,* for appellant.

WHITFIELD, C. J., delivered the opinion of the court.

The deed for construction in this case is in the following words: "This indenture, made this the 4th day of April, 1882, between Robert Bradley, of the first part, and Mrs. Drucilla Bradley, of the second part, witnesseth: That the said party of the first part, for and in consideration of the sum of three hundred dollars to me in hand paid by the said party of the second part, the receipt of which is hereby acknowledged, and the natural love and affection I bear my wife, said Mrs. Drucilla Bradley, have granted, bargained, sold, and conveyed, and by these presents does grant, bargain, sell, and convey, to the party of the second part during her natural life, and at her death to revert to my heirs, that certain tract of land situated in the city of Jackson, county of Hinds, state of Mississippi, known and described as follows: One hundred feet on Pascagoula street by eighty-five feet on Congress street, being northeast angle of square 9 D, South Jackson, together with ap-

purtenances to said premises belonging, and all estate, title, and interest, both at law and in equity, of the party of the first part in the same — to have and to hold the said granted premises, with appurtenances, unto the party of the second part during her natural life, and at her death to revert to my heirs. In witness whereof the said party of the first part has hereunto set his hand and seal the day and year above written. [Signed]  ROBERT BRADLEY."

It is perfectly manifest — too plain for discussion — that the intention of the grantor was to convey to his wife, Mrs. Drucilla Bradley, the life estate in said property, and the life estate only, and that the remainder was limited to his (the grantor's) heirs, meaning by the word " heirs " manifestly children. The word " heirs " is not used here in its technical sense, but as descriptive of the persons to take. *Harris* v. *McLaran,* 30 Miss., 571. It is impossible to derive by any fair construction any other intent from this instrument, and this intent is manifested by the instrument itself, taken as a whole, as alone it can properly be taken. The word " heirs " is not to be given the technical signification contended for by counsel for appellant, to the utter overthrow of this manifest intention on the part of the grantor, when to take it as meaning children, as descriptive of those to take, consists with and supports that intention. The principles which control this case are to be found in the case of *Hart* v. *Gardner,* 74 Miss., 153; 20 South., 877. That this was the grantor's intention is further made clear by considering the relationship and situation of the parties when the deed was made. Mrs. Bradley was the second wife and the stepmother of Robert Bradley, the son. The father died in 1902, the wife in 1904, and the son, Robert, in 1905. The grantor's plain purpose, gathered from the deed itself and as interpreted in the light of their relationship and this situation, was to give his wife the life estate and nothing more, and to limit the remainder to his heirs, meaning by heirs children. *Harkleroad* v. *Bass.,* 84 Miss., 483; 36 South., 537. He most

manifestly never meant in fact his wife's heirs to take, and the terms of the instrument, taken as stated, plainly manifest that intent.

We have carefully examined the authorities cited by the learned counsel for appellant, who make an exceedingly ingenious and able argument in this case, giving especial attention to *Harris* v. *McLaran,* 30 Miss., 533. The case of *Harris* v. *McLaran* is not identical with this case, though most of the language in the opinion might very well be invoked as to the general principles involved by counsel for appellant. Two things may be said about that opinion: First, that the facts of the two cases do not make them identical at all. Second, that the court paid no attention to the use of the words " shall return to my lawful heirs." The word " return " in that deed, as the word " revert " in this, has a very potent bearing in the construction of the two deeds. And, thirdly, that the decision of *Harris* v. *McLaran* might very properly have been rested alone upon the last proposition in that opinion, which was that, since Thurman died whilst his daughter was living, Thurman's collateral kin could not possibly have been his heirs; and they claimed strictly in the capacity of heirs in this technical sense, which meant those which were his heirs at his death. Really, all the rest of the opinion in strictness is pure *dictum.* What this grantor in our deed meant by " heirs " was his son. He had nobody in his mind manifestly but his son and his wife when he made the deed, and he used the word " heirs," not in its strict, technical, common-law sense, but as a mere term of description to designate his son as the person to take — as the one to whom the remainder was limited. The opinion in the *McLaran case* expressly says, at page 572: " If there was any part of the instrument, or any associated word or phrase, which, in the slightest degree, authorized the inference that the donor used the words ' lawful heirs ' in a restricted sense, it might possibly be conclusive." And again, at page 571, the court says: " Unless it was apparent from the instrument itself that

the word ' heirs ' was not used in its legal and technical accepta-
tion, but in a restricted sense, as descriptive of the persons who
as individuals were to take." We think that that intention
to use the word " heirs " in this deed as descriptive of the per-
sons intended to take as individuals is made sufficiently plain
by the deed, interpreted in the light of the relationship of the
parties and of the surrounding circumstances, giving full effect
to the meaning of the word " revert." In another case (*Morris
v. Stephens,* 46 Pa., 200) referred to by the learned counsel
for appellants it is said: " It cannot be inferred that the ex-
pression ' lawful heirs,' as employed in the deed, was intended
as the equivalent of children. The situation of the parties and
circumstances tend to rebut such an inference." Just so in this
case the situation of the parties and circumstances tend to estab-
lish such an inference. The case of *Akers* v. *Clark,* 184 Ill.,
136; 56 N. E., 296; 75 Am. St. Rep., 152, has been carefully
examined, but we find nothing in it in conflict with the views
we herein announce.

*Affirmed.*