## BYRD *et al. v.* HENDERSON.*

(Division B. April 20, 1925. Suggestion of Error Overruled May 25, 1925.)

[104 So. 100.   No. 24724.]

1. WILLS.  *Evidence of surrounding circumstances to determine, whether words "and her heirs" in devise to testator's wife were used in technical sense held admissible.*

   In a contest over the title of lands where both parties claim under a will which recites: "I give, devise and bequeath all of my estate and property, real and personal, as follows: [describing same] to my present wife, Nancy J. Prine and her heirs. I appoint as my executor Nancy J. Prine, my present wife, and my daughter Ellen L. Prine, but if my wife should marry again she shall thereupon cease to be an executor and trustee of my will which shall thenceforth take effect, and be executed in the same or in like manner as if the said Ellen L. Prine had originally been appointed the sole trustee and executor," there is such ambiguity in the will as will authorize the admission of evidence as to the surrounding circumstances to ascertain wherein the testator used the words "and her heirs" in the technical sense, or whether in the sense of "and her children."

2. QUIETING TITLE.  *In suit to determine meaning of will devising property to person and her heirs, all children of such person should be made parties defendant.*

   In such contest, where the suit is to cancel the claims of the children, and where there are minor children involved, all of the children of Nancy J. Prine, should be parties defendant and the whole controversy settled in one suit.

---

*Headnotes 1. Wills, 40 Cyc., pp. 1431, 1462; Word "heirs" when construed to mean "children" see note in 1 L. R. A. (N. S.) 319; 28 R. C. L., p. 248; 5 R. C. L. Supp. 1523; 2. Quieting Title, 32 Cyc., p. 1346.

APPEAL from chancery court of Greene county.
HON. V. A. GRIFFITH, Chancellor.

Suit by Idus L. Henderson against W. C. Byrd and Maggie Byrd and another. From judgment below, defendants appeal. Reversed and remanded.

*Currie & Currie,* for appellant.

In support of the first assignment of errors, we ask: Did the court have authority, acting of its own motion, to dismiss out of court, without a hearing, the adult defendants and cross complainants? Can such a proceeding find support in either the law judicial proceedings in the due course of the administration of justice, or the public policy of a democratic government?

These defendants were sued and brought into court by due process of law, to answer a bill of complaint filed against them by the complainant, charging them with falsely and fraudulently setting up claims of title to property belonging to the complainant, and with conspiring with other defendants, named in the bill to wrongfully and fraudently deprive the complainant of her property. These defendants had the legal right to file an answer denying these charges. They filed an answer denying them. They were entitled to a public trial in the court on the bill and answer. They were entitled, publicly and in court, to vindicate themselves of these charges. Under the law and established rules of practice they were entitled to make their answer a cross bill, which they did, setting up the source, nature and justice of their claims to the property.

As to the minors, the court knew they had been made parties defendant to the original bill. The court knew that the original bill had been dismissed as to them, on the motion of the complainant, by a decree signed by the court. What could these adult defendants or their counsel do to get them back in court? Did we have any right to file an answer for them to a bill in which they were not defendants? Did we have any right to file a cross bill for them in a suit in which they were not parties? Could they be drawn into the case and be made parties thereto by a cross bill?

The complainant in the original bill chose her adversaries and among them were these minor and adult de-

fendants who were left out and dismissed by the court. The complainant in the original bill did not select certain of her adversaries, but selected all of them. The complainant in the original bill drew no distinctions, physical or otherwise, between her adversaries. She treated them all just alike. She sued them all in the same bill, making the same charges against them. The title to the land was the main issue. The possession auxiliary or secondary only.

If these defendants are to be bound by the decree, they surely did have a right to be heard. If they are not to be bound by it, then they will have the right, regardless of the outcome of this appeal, to file a suit themselves to test their rights. The law is settled, as we understand, that no person's rights can be affected by a decree or judgment in a case to which he is not a party. The policy of the law to put an end to litigation by settling the whole controversy between all parties in one suit is, as we understand it well settled.

These defendants had gone to the trouble and expense of employing counsel and preparing for the trial. They were acting in good faith. They were not trifling with the laws, or the courts or the rights of the complainant. Their rights were left unsettled. Their minds still vexed. They had the right under the law to have their rights settled in this suit. They wanted them settled. They were dismissed without a hearing and without any settlement of their rights. This was a denial to them of their rights.

As authority in support of this assignment of error, we cite the whole course of our laws, the whole course of our system of jurisprudence, the whole course of our established rules of practice in the orderly administration of justice, to settle the rights of all litigants justly, and bring the litigation to an end. A question like this does not descend to "cases" as authority, but ascends to the heights of the living, breathing, moving and controlling principles of the law.

It is manifest from the language of the will itself, construed as a whole, that it was the intention of the devisor to will the estate to his wife, Nancy J. Prine, and her children begotten by him, and the decree is contrary to the will and the law and ought to be reversed.

*Scott* v. *Nelson*, 29 Am. Dec. 266, held: ''The exposition of wills has always been governed by the intention of the testator. He, not being supposed to be acquainted with legal form and language, a greater latitude of construction is permitted, to leave one the power to make his own will in his own way. It is emphatically said, that intention is the pole-star in the direction of devisees: 2 Burr. 1112; 2 East, 42.''

*Moon* v. *Stewart*, 87 Ohio St. 349, held: ''Where a will bears the earmarks, as in this case, of having been drawn by a layman, and not by a lawyer, the court in the endeavor to arrive at the intent of the testator will not view the language technically, but liberally, and with reference to its popular meaning.

It is now a settled rule of construction of wills as well as deeds that the word ''heir'' may mean ''child''. 28 R. C. L. 248, sec. 16; *Wilberding* v. *Miller*, 88 Ohio St. 609; 21 Cyc. 425; *Campbell et al.* v. *Noble et al.*, 19 So. 28; 21 Cyc. 426-7-8; *Lockwood's appeal*, 55 Conn. 157.

The text quoted from Cyc. is supported by the supreme courts of Alabama, Arkansas, California, Connecticut, Georgia, Illinois, Indiana, Iowa, Kansas, Kentucky, Maine, Maryland, Massachusetts, Michigan, Missouri, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, Tennessee, Vermont, Virginia, West Virginia, United States, England. *Seymour* v. *Bowles*, 172 Ill. 521; *Leathers* v. *Gray*, 2 S. E. 455. It has been expressly held by the supreme court of the state of Mississippi, in *Boone* v. *Baird*, 44 So. 929, that the words ''heirs'' may be used in the sense of ''children.''

We believe we have demonstrated that the whole will construed together shows undoubtedly that it was the

intention of the devisor to devise the property to his wife,
Nancy J. Prine and her children, and as a matter of law
it was really immaterial whether that intention was fully
disclosed in the words "to my present wife, Nancy J.
Prine, and her heirs," for if it could be found in any
provision of the will the law is satisfied.

In *Hart* v. *Gardner et al.,* decided by the supreme court
of Mississippi and 20 So. 877, it was held that: "As was
well said in *Robinson* v. *Payne,* 58 Miss. 692, the inten-
tion must prevail, whether it is disclosed in the first or
the last clause of the instrument." See too *Brabham et
al.* v. *Day,* 23 So. 578.

The cases of *Hart* v. *Gardner et al.,* 20 So. 877; *Boon*
v. *Baird,* 44 So. 929; *Brabham et al.* v. *Day,* 23 So. 578,
establish in this state the principles of law under which
this will should be interpreted. According to these prin-
ciples of law the words of the will "and her heirs"
clearly mean "and her children," and so interpreted
Nancy J. Prine and her children took the estate as ten-
ants in common, and section 2765, Code of 1906, has no
application, and on the contrary, section 2770, does ap-
ply.

It is submitted that the language of this will construed
in the light of the testimony of Mrs. W. C. Byrd, ren-
ders clear the intention of the devisor to devise the prop-
erty to his last wife, Nancy J. Prine, to whom he referred
as his present wife, and her children then living, be-
gotten of her by him. It is submitted further that the
testimony of Mrs. Byrd did not tend or attempt in any
way to show an intention "contrary" to the meaning of
the words used in the will, to the exact and precise con-
trary, her testimony coincided with, made clear and sup-
ported the intention of the devisor as gathered from the
whole will. Her testimony coincides with and renders
clear the intention of the devisor to exclude from par-
ticipation in his estate at his death, as distributees, his
children by his first wife, and to devise the same by his

will to his present wife, Nancy J. Prine, and his children by her.

"The rule is often stated to be that, in order to enable the court to place itself in the position of the testator, evidence of all the circumstances surrounding him at the time he wrote his will is admissible to aid in its construction." 14 Encyclopaedia of Evidence, 502; *Gilliam* v. *Chancellor,* 43 Miss. 437.

*J. W. Backstrom,* for appellee.

The only issue I see in this case, is the construction of the last will and testament of Robert W. Prine, deceased, or that is, that part of the will reading as follows: "I give, devise and bequeath all my estate and property real and personal, as follows; consisting of horses and cattle, sheep and hogs, oxen and wagons, buggies and all farming utensils and black-smith tools, and lands to my present wife, Nancy J. Prine, and her heirs." It seems to me that this is abundantly settled in favor of the appellee, both by statute and by the decisions of this court.

The facts and the record do not bear out the argument of counsel for appellant, at pages 8 to 11 of their brief. None of the parties were dismissed until the close of the case as the court will observe by the opinion of the chancellor and also by the decree rendered. All of the defendants were dismissed without prejudice and no rights, if any they had, are prejudiced by the decree. If they own or have any claim or interest in the land herein, there is no decree rendered in this cause, that in anyway prejudices their claim and the court is open and they have a right, if they have any claim to the property, to go into the court and have it fully adjudicated.

The bill in this cause was filed under section 550, Code of 1906, to cancel a cloud upon the title of the appellee and to give appellee the possession of the property. It is shown that W. C. Byrd and Maggie Byrd, his wife, were in the possession of the property, and dismissing

the suit as to other defendants in no way affected or prejudiced the rights of the said W. C. Byrd and Maggie Byrd, and as the suit was dismissed without prejudice as to the other defendants, Lottie Manning, Pearlie Carroll, Walker Prine and Gaines Prine, the defendants who have asked the court to be permitted to join in the appeal are not prejudiced by the decree rendered as there was no relief granted against these defendants, and they have no right to join in the appeal as there was no adverse decree rendered against them. The chancellor did not abuse his discretionary power in dismissing these defendants without prejudice. The appellee is making no point on the dismissal and none of the defendants are prejudiced by the dismissal and therefore they cannot raise the question. Counsel for appellant have filed a very lengthy brief, and the principal argument made therein is, to vary the unambiguous terms of the will.

We can only judge a man's intentions by what he says, writes or does and here we have the written evidence of the actions and intentions of the testator, and there is nothing vague, indefinite, uncertain or ambiguous in the devising clause of the will. The will is perfectly plain and says to whom the property of the said Robert W. Prine was devised or given. The will devised a fee simple title to all land in Nancy J. Prine.

Courts cannot construe wills or decide lawsuits upon speculation or upon what someone might think a testator meant by his will, but, they must construe all the facts as written in the will and according to the law. The will herein conveyed a fee simple title to Nancy J. Prine. There is no mention of a life estate and while it is true, that he could have conveyed to Nancy J. Prine a life estate with the remainder to her heirs, but, he did not do this. There is nothing unreasonable about a man conveying all of his property to his wife when he expects to die shortly and leave her with a number of children and we submit that this is the most reasonable thing for a man to do with his property. If Prine had conveyed

the property to his wife and children born of his second wife, the title of the property would have been placed in such condition that she could not have handled it or disposed of any of it without applying to the chancery court for authority to do so.

The argument of counsel for appellants has been condemned by numerous decisions of this court and is in the teeth of section 2765, Code of 1906. If we take their argument, we will have an estate fee-tail, which is prohibited. It is no uncommon thing in deeds and other instruments to put either in the granting clause or the *habendum* clause, "to John Doe and his heirs." If such a clause meant to John Doe and his heirs present and prospective as tenants in common as is argued by counsel for appellants, it would place the title in doubt and in such condition until none would be safe in buying it until John Doe dies and it could be ascertained who were his heirs. If the argument of counsel for appellants should be upheld it would place in doubt the title to millions of acres of land to millions of dollars of property. In the case at bar, Nancy J. Prine is still living and we do not know who will be all of her heirs when she departs this life. Heirs of a person have no interest in that person's estate until he dies and then only in such part of the estate as the ancestor dies seized and possessed of.

Counsel for appellants say in referring to the opinion of the chancellor that the injection of section 2765, Code of 1906, is like throwing a monkey wrench into a properly constructed and perfectly running piece of machinery. We say that the injection of this statute into the argument of counsel and into his theory is not only like throwing a monkey wrench into a properly constructed and perfectly running piece of machinery but, is like throwing a ton of dynamite into such a piece of machinery.

Counsel for appellants cite the case of *Boone* v. *Baird,* 44 So. 929, in support of his argument. This case is not in point with the case at bar. In the Boone case the deed

conveyed a life estate to the first grantee with the remainder to the heirs of the grantor, which is not the facts in the case at bar. The Boone case was distinguished in the case of *William* v. *Green,* 91 So. 39; Sec. the following sections 2764, 2435, 2765, 2436, 2769, 2440, 2770, 2441, Code of 1906.

There is no question but that Nancy J. Prine took a fee-simple title to the property herein, the will reading, ''to my present wife, Nancy J. Prine, and her heirs.'' This would be true even though the will read, ''to my present wife, Nancy J. Prine, and the heirs of her body.'' There is no mention of a life estate with the remainder to her heirs, so they could not take by way of remainder and they certainly could not take as purchasers. The case of *Jordan* v. *Roach,* 32 Miss. 481, is in point. The case of *Wallace* v. *Wallace,* 75 So. 449, 114 Miss. 591, is conclusive and settles every contention raised. The Wallace case was cited with approval in *Liberty Bank* v. *Wilson,* 77 So. 145, 116 Miss. 337. See also *Bolton* v. *Barnett,* 95 So. 721.

The only question, as I understand it, for the court to pass upon in this case, is the construction of the will of Robert W. Prine, deceased, and all the authorities that I have been able to find hold that a devise to a person named and his or her heirs, or the heirs of their body, vests a fee-simple title in the donee. The chancellor was right in so holding and this cause should be affirmed.

*Stevens & Heidelberg,* also for appellee.

In their effort to construe the will in question as devising the land to Mrs. Prine and the children of her body, counsel seek to overturn a statute which has been in force in Mississippi for one hundred and three years. We refer to section 2765, Code of 1906, section 2269, Hemingway's Code, prohibiting estates in fee-tail, and which statute has been construed and enforced in full vigor in the following cases: *Powell* v. *Brandon,* 24 Miss.

343.; *Jordan* v. *Roach,* 32 Miss. 481; *Dibrell* v. *Carlisle,* 48 Miss. 691; *Middlesex Banking Co.* v. *Field,* 84 Miss. 646, 37 So. 139; *Wallace* v. *Wallace,* 114 Miss. 591, 75 So. 449; *Phillips* v. *Tynes,* 75 So. 775; *Liberty Bank* v. *Wilson,* 116 Miss. 377, 77 So. 145; *Smith* v. *Muse,* 98 So. 436; *Scott* v. *Turner,* 102 So. 467.

The language of the will making devise to "Nancy J. Prine and her heirs," has a definite, fixed technical meaning which has come down to us through the common law since before Blackstone's time. Surely counsel should not be heard to trifle with so venerable and ancient a legacy of the law as this. We admire their ingenuity and their ability to almost make a case where there is none but we question their loyalty to the ancient landmarks when we read their voluminous discussion in the effort to overturn the ancient definition of these familiar words of devise so commonly employed in the past in the making of wills and the conveying of real estate.

Any argument on our part in the face of the many decisions of this court under the said statute, would seem to be the work of supererogation.

*Currie & Currie,* for appellant, in reply.

The whole contention of the appellee is contained in the following quotation taken from page 5 of the brief filed by Messrs. Stevens & Heidelberg: "The language of the will making devise to 'Nancy J. Prine and her heirs,' has a definite fixed technical meaning which has come down to us through the common law since before Blackstone's time."

This contention forces the appellee to the position that these words always retain and must always be given, as a matter of law, their highly technical meaning, regardless of the connection in which or the sense in which they are used. In other words, no matter in what connection or in what sense used and no matter by what other language, facts or circumstances a clearly different meaning

might be necessarily imported into them, as a matter of fact and intention, still by this hard and fast and set rule of law, the technical meaning would have to prevail.   And unless counsel for the appellee are correct in this contention the decree of the court in this case is clearly erroneous and ought to be reversed and a decree rendered in this court for the appellants.

After giving careful study and consideration to every case cited by counsel for the appellee, we are prepared to assert and do assert that not one of them holds the contention of counsel for appellee.   It has never been held by the supreme court of this state or that of any other state that these words are legally incapable of any other meaning than the highly technical one.   The settled law is to the exact and precise contrary.   These words are highly flexible.   They are capable of application to many different persons and relations and are susceptible to many different legal meanings.   The meaning of these words in the law always depends upon the sense in which, the connection in which, the intent with which and the purpose for which they are used.   They have no hard, fixed, set technical meaning which is inflexible, unbending and unchanging.

Has the word "heirs" such a fixed, definite and set technical meaning?   In answer to this question see 28 R. C. L. 217, announcing this rule: "A testator may ignore the technical meaning of the word, and in its interpretation such a meaning may be given it as the testator evidently intended it should have, as disclosed by the whole instrument.   As a mere matter of construction the word 'heir' may be interpreted as the equivalent of 'child' when the context so requires." *McLean* v. *Williams,* 116 Georgia, 257; *Moon* v. *Stewart,* 87 Ohio St. 349; *Galloway* v. *Darby,* 105 Ark. 558; *Wilkerson* v. *Clarke,* 80 Ga. 367; *Gannon* v. *Peterson,* 193 Ill. 372; *Andrews* v. *Applegate,* 223 Ill. 535; *Shimer* v. *Mann,* 99 Ind. 190; *Grainger* v. *Grainger,* 147 Ind. 95; *Kalbach* v. *Clarke,* 133 Ia. 215; *Den* v. *Barnes,* 4 N. C. 96; *Waller* v. *Martin,* 106

Tenn. 341; *Com.* v. *Wellford,* 114 Va. 372; *Ramsay* v.
*Joyce,* McMul. Eq. (S. C.) 236.

Argued orally by *N. T. Currie,* for appellant.

ETHRIDGE, J., delivered the opinion of the court.

The appellee filed her bill against the appellants and
certain other parties who are the children and descend-
ants of Robert W. Prine and Nancy J. Prine, alleging
that she is the owner of certain lands described in the
bill acquired from Nancy J. Walley, who was formerly
Nancy J. Prine, a former wife of Robert W. Prine who
formerly owned the lands, and that he executed a will
bequeathing said property to Nancy J. Prine, his then
wife, and after executing said will said Robert W. Prine
departed this life without having revoked said will or
making another; that subsequent to the death of Robert
W. Prine, Nancy J. Prine, widow and sole legatee under
said will which was duly proven and filed for probate and
appears of record, intermarried with one W. R. Walley
and thereafter in 1919 the said Nancy J. Walley, who is
the same person as Nancy J. Prine mentioned in said
will, for a valuable consideration conveyed by warranty
deed said lands to R. S. Henderson, said deed appearing
of record, and that afterwards, to-wit, on the 28th day
of October, 1911, R. S. Henderson for a valuable con-
sideration conveyed said land to Idus L. Henderson,
which deed appears of record.

It is further alleged that after acquiring said lands
that said R. S. Henderson went into possession of said
lands, made valuable improvements on said property
and exercised all acts of ownership until he conveyed to
the complainant, Idus L. Henderson, when complainant
went into possession thereof and held said lands for a
period of more than ten years and had a perfectly valid
and legal title, and that she is the true, legal, and equi-

table owner of the said lands and entitled to the immediate possession thereof.

It is further alleged that the defendants, W. C. Byrd and Maggie Byrd, are now living in the buildings on the said land and that complainant has demanded that said W. C. Byrd and Maggie Byrd vacate said premises and deliver same up to the complainant, which they refuse to do; that said W. C. Byrd and Maggie Byrd have no title, legal or otherwise, to said lands, but that complainant is advised they are claiming to be the owners of said land and in possession; and that their said claim and possession cast a cloud upon the title of the complainant.

Complainant then alleged that Robert W. Prine left certain parties named in the bill as children but that some of the children of Robert W. Prine had died and left named heirs in the bill, and that said defendants are conspiring with the said W. C. Byrd in retaining possession of the property and making claim to the said property, but by what authority complainant is not advised, and praying for process against the defendants and for a cancellation of their claims as clouds upon her title, and for writs of possession to dispossess defendants and repossess complainant.

The will referred to in the bill reads as follows:

"State of Mississippi, Greene County, April 14, 1902.

"I, Robert W. Prine of Greene County, Mississippi, and of sound mind and memory, make this my last will and testament.

"I give, devise and bequeath all of my estate and property, real and personal, as follows:

"Consisting of horses and cattle, sheep and hogs, oxen and wagons, buggy, and all farming utensils, and blacksmith tools and land.

"To my present wife, Nancy J. Prine, and her heirs. I appoint as my executor Nancy J. Prine, my present wife, and my daughter Ellen L. Prine, but if my wife should marry again she shall thereupon cease to be an executor and trustee of my will which shall thenceforth

take effect, and be executed in the same or in like manner as if the said Ellen L. Prine had originally been appointed the sole trustee and executor.

"In witness whereof I have signed, published and declared this instrument to be my last will and testament on this April 14, 1902.

                              "[Signed]   ROBERT W. PRINE.
"State of Mississippi, Greene County.

"The said Robert W. Prine of Greene County, Mississippi, on the 14th day of April, 1902, signed the foregoing instrument and published and declared the same in our presence as his last will, and we, at his request and in his presence and in the presence of each other on said date, have hereunto written our names as subscribing witnesses thereto.

                              "[Signed]   G. T. DUNNAM.
                              "J. N. DUNNAM."

Said instrument was also acknowledged before a justice of the peace on May 12, 1903, and on November 1, 1903, J. N. Dunnam, one of the subscribing witnesses, made an affidavit to the due execution of the said will and said will was admitted to probate on/ the said day.

Neither said Nancy J. Prine nor Ellen L. Prine mentioned as executors and trustees under said will qualified as such, and there seems to have been no administration or execution of the will.

At the time of the making of the will and until his death Robert W. Prine occupied the premises with his family, and his widow and children occupied the same thereafter until the marriage of the widow with Walley.

Just before the return term of the court some of the attorneys for the complainant and the attorneys for the defendants entered into an agreement at Hattiesburg to continue the case, but a resident attorney of the county, not being advised of the agreement, took a *pro confesso* against the adult defendants and dismissed the bill as to the minor defendants, but afterwards on being advised of the existence of the agreement these decrees were

set aside by consent and the case reinstated for trial on the docket between the appellants and appellee, but the parties against whom the bill was dismissed, being the minors named as defendants, were not resummoned to court and were not represented in the trial of the cause. The defendants, who are appellants here, answered the bill and set up a claim to an undivided interest in the land, claiming under the terms of the will that they were tenants in common with Nancy J. Prine, the widow of the testator. The defendants offered the testimony of the appellants and of the subscribing witnesses to the will to show the circumstances of its execution and the intent of the testator to devise the lands to his wife and children by the last wife of Robert W. Prine as tenants in common. This testimony tended to prove that the testator intended to devise the lands to his wife and his children by his wife, Nancy J. Prine. The testator had been married prior to his marriage with Nancy J. Prine and had a number of children by such marriage, some of whom had left the home and established homes of their own.

The will was written by the subscribing witness, George T. Dunnam, who testified that he had lived neighbor to the testator practically all of his life; that testator had been married twice and had children by his first wife and by his second wife; that at the time of the making of the will the children by the second wife were small and that one of the children was born some four months after the death of the testator. Dunnam testified that the children by the last marriage ranged from about thirteen years of age down to small children; that witness was more or less familiar with the business affairs of Robert W. Prine and that he drew the will because Prine came over and asked him to assist him, in making his will; that Prine stated to the witness, Dunnam, "My oldest heirs by my first wife have had some stuff," and the witness said, "He led me right up to believe that he wanted his present heirs to have that." Witness

stated that testator meant by his present heirs his wife
then living with him and his children by such marriage
—the children that he had under his roof at the time—
that it was the fixed belief of the witness that the tes-
tator meant for his present wife, then living, and his little
children then under his roof to have the property em-
braced in the will.   The other witnesses testified prac-
tically to the same effect but the chancellor excluded
this evidence on the theory that the will was plain and
unambiguous and had a fixed and definite meaning which
could not be explained by oral evidence.   After stating
this view, the chancellor in his opinion said:

"The court might add that if this testimony were com-
petent it would show by a preponderance of the evidence,
if not clearly and convincingly, that he did intend to leave
this property to his present wife and to all the children
by that wife as tenants in common.   The misfortune was
that the draftsman of the will apparently did not make
the meaning clear and instead of expressing the mean-
ing, wrote it right into the jaws of the statute, which
makes such words mean a fee-simple title."

The will under consideration was drawn by farmers
unacquainted with legal procedure and technical terms.
If the terms are plain and unambiguous taking the whole
will into consideration, the court would give them their
legal meaning, but if an examination of the whole will
shows that it is doubtful what meaning the testator in-
tended to convey by the will, the circumstances surround-
ing the parties may be looked to to determine whether
the words were used in their legal signification or whether
they were intended to be given a different meaning.

The will is inartificially drawn.   Apparently in one
sentence the testator intends to convey to Nancy J. Prine
and her heirs.   If this stood alone it would be given its
legal meaning.   However the will has a provision:

"I appoint as my executor Nancy J. Prine, my present
wife, and my daughter Ellen L. Prine, *but if my wife
should marry again she shall thereupon cease to be an*

*executor and trustee of my will* which shall thenceforth take effect, and be executed in the same or in like manner as if the said Ellen L. Prine had originally been appointed the sole trustee and executor.''

If the testator intended to give his wife, Nancy J. Prine, a fee simple free from any claim or use of his other heirs the provision above quoted would be needless. It indicates that he intended his estate to be enjoyed by his children in the event his wife should marry again. The word ''heirs'' is sometimes used in the sense of children as shown by numerous authorities.

In *Boone* v. *Baird*, 91 Miss. 420, 44 So. 929, our court recognized this meaning and gave to the word ''heirs'' in a conveyance a meaning identical with children. In that case the grantor conveyed a life estate to the wife with remainder to his heirs without naming them. He had one child by his former marriage and the court held that the word ''heirs'' as used in the conveyance had the meaning of children, and upon the death of the wife the estate passed to the son of the testator. In the course of the opinion (91 Miss. at page 426 [44 So. 929]), the court said:

''It is perfectly manifest—too plain for discussion— that the intention of the grantor was to convey to his wife, Mrs. Drucilla Bradley, the life estate in said property, and the life estate only, and that the remainder was limited to his (the grantor's) heirs, meaning by the word 'heirs' manifestly children. The word 'heirs' is not used here in its technical sense, but as descriptive of the persons to take''—citing *Harris* v. *McLaran*, 30 Miss. 571.

In *Harris* v. *McLaran*, 30 Miss. 533, the word ''heirs'' was given a different meaning also from its legal signification and construed to mean personal representative.

In 28 Ruling Case Law, p. 248, section 216, on construction of wills as regards persons, speaking with particular reference to the use of the word ''heirs,'' it is said: ''A testator may ignore the technical meaning of the word,

and in its interpretation such a meaning may be given it as the testator evidently intended it should have, as disclosed by the whole instrument. As a mere matter of construction the word 'heir' may be interpreted as the equivalent of 'child' when the context so requires.''

See, also, *Wilberding* v. *Miller,* 88 Ohio St. 609, 106 N. E. 665, L. R. A. 1916A, 718; 21 Cyc. 425; *Campbell* v. *Noble,* 110 Ala. 382, 19 So. 28; *Lockwood's Appeal,* 55 Conn. 157, 10 A. 517; *Seymour* v. *Bowles,* 172 Ill. 521, 50 N. E. 122; *Mace* v. *Cushman,* 45 Me. 250.

We are of the opinion that the will should be construed in view of the provisions noted above in accordance with the surroundings and circumstances existing at the time, and in accordance with law bearing on the interpretation of ambiguous instruments, and that therefore the court below erred in excluding the evidence offered by the defendants.

Appellants also insist that the other heirs of Robert W. Prine by Nancy J. Prine should be made parties to the suit, and that the court could not dispose of the case without such heirs being brought into court as defendants, and that the defendant could not bring them in.

Ordinarily the absence of the parties who ought to be complainants or defendants can only be raised by plea setting forth the names and relations of the parties, showing the necessity for their appearing in court. It is not necessary now to decide whether we would reverse on this ground alone, but we are of opinion that the better and safer practice would be to have all the parties in interest before the court. See *Marx* v. *Hale,* 119 Miss. 410, 81 So. 119.

As the case must be reversed for the reasons set forth above, we think the entire controversy ought to be settled in one suit, and all of the parties interested brought into court either as complainants or defendants.

*Reversed and remanded.*