BARNER *et al. v.* LEHR *et al.*

(In Banc. Dec. 23, 1940.)

[199 So. 273. No. 34332.]

Johnson & Allen and Cooper & Thomas, all of Indianola, and H. Lee Herring, of Ruleville, for appellants.

**J. M. Forman**, of Indianola, and **R. D. Everitt**, of Rule-ville, for appellees.

**Ethridge, J.,** delivered the opinion of the court.

The appellants, complainants in the court below, filed a bill against the appellees for the cancellation of claims of appellees to certain property described in the bill, and for further relief, general and special. The bill alleged that the lands involved in the suit, to which the defendants claimed the right, had belonged to Mrs. M. Barritt, also known as Mrs. C. A. Barritt, in her lifetime, she having died on December 18, 1938, without issue, and without having made conveyance of the said property during her lifetime. She died intestate, seized and possessed of the lands, leaving, the bill alleged, the complainants as her sole heirs-at-law, who inherited the lands; but the defendants claimed title thereto.

The defendants were summoned and answered the bill, propounding their claim to the land in question through a will made by M. Barritt, the husband of Mrs. M. Barritt; also setting up the claim that in his lifetime Mrs. M. Barritt (or Mrs. C. A. Barritt) conveyed the lands to her husband, which deed was never placed of record, and could not be produced, as it was claimed to have been lost.

Title to the land in question was deraigned from the United States government through the mother of Mrs.

C. A. Barritt, and passed to Mrs. Barritt through her mother's will, upon the death of the latter; such lands being described in the bill of complaint, deeds, etc., in Mrs. C. A. Barritt's chain of title, as lot 7, section 3, township 21 north, range 4 west, "less and except therefrom twelve acres," theretofore conveyed to another.

The land is described in the will of M. Barritt, which will was probated after his death by his wife, Mrs. C. A. Barritt, named therein as executor, reading, in part, as follows: "To my wife, C. A. Barritt, I devise that land located in Sunflower county, Mississippi, described as all that part of Lot seven of Section three, Township twenty-one, North, Range three West, which lies between the south boundary of Lot One of said Section and the gravel public road, for and during her natural life, with remainder in fee to E. G. Hunter."

In another article of the will it is provided: "To my wife, C. A. Barritt, I devise all of my other real estate of every kind and description and wheresoever located for and during her natural life, with remainder in fee to the children of John Lehr and Mollie Lehr, including their children, if any, hereafter to be begotten, share and share alike, living at the death of my said wife, C. A. Barrett."

The defendants set up in their answer and cross-bill that in item 3 of the will of M. Barritt, above quoted from, either through his own error or that of the scribe in the description of land, there was devised to E. G. Hunter lot 7, section 3, township 21 north, range 3 west, when in fact the lot was in range 4 west; and that it was the intention of the testator to devise said land in range 4 instead of range 3. It was further charged in the answer and cross-bill that there is no lot 7 in section 3, township 21 north, range 3 west in Sunflower county, Mississippi; that said section 3 in township 21 north, range 3 west is not divided into lots, but into quarter sections; that M. Barritt never owned any land in range 3 in Sunflower county, but that at the time he wrote the will, and at the

time of his death he did own lots 2 and 7, section 3, township 21 north, range 4 west in Sunflower county; and that he intended to devise, and in fact did devise, that part of lot 7 in section 3, township 21 north, range 4 west, which lies between the south boundary of lot 1 of said section and the graveled public road, to his wife, Mrs. C. A. Barritt, "for and during her natural life, with remainder in fee to E. G. Hunter;" and that the cross-complainants are advised that the court should declare the proper description of said land erroneously described in the said will of M. Barritt.

Also, it was set up in the answer and cross-bill that certain statements had been made by Mrs. C. A. Barritt in her lifetime, indicating that M. Barritt owned the property, and had used, rented and improved it; and that Mrs. C. A. Barritt, in probating the will containing the above description, was thereby estopped from disputing the ownership of the lands in M. Barritt; and that the complainants, as her heirs, are also estopped from asserting claim, for that reason.

The defendants, and cross-complainants sought among other things, to establish adverse possession of the said land by M. Barritt in his lifetime as against his wife even though no deed had been made—which they claim was done, although not recorded—alleging that by his acts of ownership, and claim of ownership, he possessed the title as against his wife, Mrs. C. A. Barritt. The proof in the case shows that M. Barritt owned lot 2 of section 3, township 21 north, range 4 west, and that lot 7 of said section, township and range lay south thereof, and adjoining the home of M. Barritt and his wife, Mrs. C. A. Barritt, being on said lot 2.

M. Barritt and Mrs. C. A. Barritt, husband and wife, lived upon the property involved in this suit, occupying it as a homestead from 1878 until the death of M. Barritt in 1930, and the death of Mrs. C. A. Barritt in 1938, she having continued to live in the home after her husband passed away. Mrs. Barritt died intestate, leaving no

children, and the complainants, appellants here, are her heirs-at-law.

We are of the opinion that the possession and use of the property by M. Barritt in his lifetime was insufficient to establish title by adverse possession, being such as is usual where the husband has charge of the wife's property and operate it as a farm. In such case the husband is the agent of the wife, and they are each in possession of the land, which in this instance they occupied during their lifetime. Consequently there was no proof of exclusive possession, and no proof of hostile use, excluding the wife from possession and occupation. We do not deem it necessary to elaborate upon the law in this regard. Where the husband uses the wife's property, he is considered her agent in such use, by virtue of our statutory regulations.

We do not hold that under no circumstances would the husband acquire right to the property of the wife by adverse possession, but if there are such instances, this record does not present such a case. The entire use and occupancy of the property by M. Barritt during his lifetime was consistent with the title and ownership which was in his wife, so far as lot 7 is concerned. The general rule is that the occupancy of property is in accordance with the title thereto, and the adverse possession must be such as to remove this presumption by clear and unequivocal claims and acts of ownership, of which the title owner is aware, or should be charged with knowing clearly, so as to show that there existed such occupancy as is required in order to acquire title against the true owner.

Cross-complainants also sought to prove title by deed through the testimony of a lady who was a near neighbor of Mr. and Mrs. Barritt, and on intimate terms with them. This lady was said to be aged, and her deposition was taken out of court. The questions propounded to her in the deposition were grossly leading, and objection was interposed at the time of its introduction, being vigorously pressed when it was offered in evidence. The

attorney for the complainants sought to have this lady brought before the court, to testify as a witness in open court, but because of illness this was not done.

The only evidence given by this witness in regard to the deed was in answer to very leading and suggestive questions; but she did not anywhere show that the deed which she claimed to have seen was in the possession of Mr. M. Barritt; it was in the possession of a Mr. Lehr. She did not testify as to how the deed came into the possession of this person, among whose papers she claimed to have seen it, nor for what purpose it was placed among such papers. A sample of the questions and answers follows:

"Miss Annie, are you familiar with the land described as lots two (2) and seven (7) of section three (3), township twenty-one (21), range four (4) west, which is the property on which Mr. and Mrs. Barritt lived during their life?" "Yes sir."

"Now the records show, the maps show, or the plats show that lot seven (7) lies immediately south of lots one (1) and two (2) of section three (3). I believe you were present the other morning when they were showing you about where the line was between the two?" (Objected to leading of witness, and also to the question.) "Yes, sir."

"Now, I will ask you if you at any time ever saw a deed from Mrs. C. A. Barritt to M. Barritt, for lot 7, of section 3, township 21, range 4 west?" (Objection.) "I did."

"Do you remember the date of that deed?" (Objection.) "No. I really don't. I know it was long ago."

"You remember that it was long years ago?" (Objection.) "Yes, sir."

"Do you recall whether it was written with a typewriter or pen and ink?" (Objection.) "Pen and ink."

"Now, I'll ask you if that deed you saw signed by Mrs. Barritt to this lot 7, was it acknowledged by an officer?" (Objection.) "Yes."

"Do you recall what officer acknowledged it?" (Objection.) "I can't recall the name, but my mother said

that he lived in Indianola, but I do not know his name.''

"You don't know who that officer was?" (Objection.) "No, sir.''

"Do you recall whether or not it showed whether it had been filed of record?" (Objection.) "No, it was just a piece of paper about so large (indication with hand about the size of legal cap paper) and was filed by Mrs. Barritt.''

"Do you recall what the consideration for this deed was?" (Objection.) "Well, I couldn't say just word for word, but it was something about the love and respect and so on that she had for her husband, M. Barritt, about she was deeding all of 'my' property, it said. I don't know whether she said property or real estate, 'To my husband, M. Barritt,' it said.''

"Then the consideration was love and affection?" (Objection.) "Yes, sir.''

"Where was this deed when you saw it?" (Objection.) "It was in a lot of papers at John Lehr's where we saw it.''

"Now, Miss Annie, I believe you stated that you knew Mr. and Mrs. Barritt, and particularly Mrs. Barritt, intimately during her lifetime?" "Yes, sir.''

"Did you ever hear Mrs. Barritt make any statement at any time to you or in your presence with reference to this property over there where they lived?" (Objection.) "Yes, sir.''

"You did hear her?" (Objection.) "Yes, sir.''

"Was that before or after Mr. Barritt's death?" (Objection.) "After.''

"Do you remember where it was that you heard this conversation?" (Objection.) "At my home.''

"Will you state what that conversation was, or what it was about, or what she said?" (Objection.) "Well, one time, I remember, I said something to her about having something done, or some repair work done in her house, and she said, 'Well, I think I will do that some time' and I said, 'Well, if I were you I would have anything that I wanted done as long as I was here, because

you are not going to take any of it with you.' She said, 'Well, I have the money but I don't want to spend everything I have, but I am going to fix my room like it should be some time.' She said she remembered one case in particular where people did without things and then at the wind up, she just did like this (made motion with hands), there was nothing left. I said, 'Yes, that's the way your things are going.' She said, 'No, indeed, I have everything fixed. I know just how it is going to be.' She said that she and Mr. Barritt fixed 'that long ago, and I didn't ask her how. She kept saying that everything was fixed and that she was well satisfied just how things were going to be.''

The evidence does not show, as above stated, how it came about that a deed from Mrs. Barritt to Mr. Barritt was in the possession of John Lehr. The latter was called as a witness, but he made no statement about having such a deed, nor what became of it, nor the circumstances under which it was delivered to him. In other words, he did not testify in regard to his having this deed in his possession. It was shown by the evidence that after the death of Mrs. Barritt he wrote to one of her heirs-at-law concerning the purchase of some of the property, inquiring as to the price for which it could be bought; also stating that Mr. Barritt left some property to his children, and that he supposed Mrs. Barritt did the same thing—that they could find no papers. It appeared from his testimony that he could not read and write—his wife did the writing.

The testimony in the case showed that after Mr. Barritt's death the original of his will could not be found; but a carbon copy was produced from the files of the attorneys who drew the will, and this copy was probated instead of the original will.

It will be seen in reading the clauses of the will of Mr. Barritt that the description of the property in item III thereof is specific, and that there is nothing in the will to supplement it. Actually, it conveyed property which

was in a different township, some six miles east of the property in question.

The defendants and cross-complainants undertook to show that section 3 of township 21, range 3, was not divided into lots, but into quarter sections. This might be true, but still it does not prevent a subdivision of that section, by private surveys, into lots; and if so the disposition of the property by such description would carry whatever rights the testator had.

To obtain the decree of the chancellor the appellees relied principally upon the case of Chrisman v. Magee, 108 Miss. 550, 67 So. 49, 901; 40 Cyc. 1559; Patch v. White, 117 U. S. 210, 6 S. Ct. 617, 29 L. Ed. 864. In Chrisman v. Magee, supra, the facts were discussed and rules of law announced, the original opinion holding that the conveyance of parts of the land was invalid; but on suggestion of error it was held, as to a particular part of the land, that if the erroneous description were stricken out there would still remain in the will enough to identify or locate the land disposed of, it appearing that such land was so described as to enable the court to locate it, the identifying description being contained in the will itself.

In the case now before us there is nothing in the will to so aid the description as to authorize the Court to find that the land involved was within the terms of the will, or to enable it to find or locate the land from the will itself.

In Chrisman v. Magee, supra [108 Miss. 550, 67 So. 52], among the rules laid down in regard to such matters, not based on the suggestion of error, is this: "Where such description is accurate as that contained in the will now before us, oral testimony will not be admitted to show that the testator did not intend to devise the land described, but another parcel of land."

It was also held that: "Where land belonging to the testator was not disposed of nor attempted to be disposed of and there was nothing in any clause of the will to prevent it from being embraced in the disposition of a residuary clause, it should be awarded to the residuary

devisees." In the course of the opinion of the Court in this case, it cited Ehrman v. Hoskins, 67 Miss. 192, 6 So. 776, 19 Am. St. 297, as follows: "Where the owner of several lots devises one of them by an accurate description, parol evidence is incompetent to show that he intended to devise a different lot, and that by mistake the wrong lot was described." The Court also quoted the following from the same case: "The effect of the testimony admitted by the court over the objection of the appellants was to substitute for the will made by the testator that which the witnesses endeavored to show he really intended to make, and as to which he failed by mistake of the drawer of the will. It is not allowable to do this, as to which all the books agree."

In the syllabus to Ehrman v. Hoskins, supra, the rule is stated: "Where the owner of several lots devises one of them by an accurate description, parol evidence is incompetent to show that he intended to devise a different lot, and that by mistake the wrong lot was described."

This case has not been overruled, and is still the law. Equity cannot reform a will; and where a will diposes of property by definite description, parol evidence is not admissible to contradict or vary the description. And in all cases where there is error in one part of a description in a will, it can only be construed by resorting to another part of the will, to show such mistake or to furnish a definite cure which makes the meaning clear. In other words, the Court cannot make a will for the testator.

In this view, it is wholly immaterial whether M. Barritt actually owned land in range 3 or not. With reference to the deed referred to in the testimony of Miss Marshall, in order to constitute a delivery of deed to a third person, instead of to the grantee, the delivery must be such as deprives the maker of the deed, or the grantor of any further control of the deed. In other words, the delivery, in such case, to the third person for the benefit of the grantee, must be such as to permanently deprive the grantor of right in the deed, or control over it, and his

parting with the title must be absolute and permanent. This is shown by the case of Weisinger v. Cock, 67 Miss. 511, 7 So. 495, 19 Am. St. Rep. 320, where in the syllabus is announced that: "An instrument signed and acknowledged as a deed and intrusted to an agent for safe-keeping, with directions not to deliver it, unless the grantor should die before returning from a certain journey, is inoperative, though delivered after the death of the grantor while on such journey, in pursuance of his intention to vest the title to the property in the grantee in the event of his death. Under these facts there is no *present* delivery, absolute or conditional."

Neither the delivery of a deed, nor the conditions and purpose of its delivery, appear in the present case; and granting the sufficiency of Miss Marshall's testimony to establish the fact that there was such a deed among the papers of John Lehr, it wholly fails to show how it came there, or for what purpose it was delivered, or was intended to be delivered to him by M. Barritt, and is insufficient to constitute such a delivery.

In 18 C. J., title "Deeds," page 413, section 492, it is said: "Where the delivery of a deed is placed in issue, the burden of proof rests upon the party asserting delivery, although it need not be proved by positive testimony, but may be inferred from circumstances, or from acts and declarations of the parties constituting parts of the res gestae and which show such an intention. . . . It will not be presumed that the handing of a deed to a third person without more was a delivery to the grantee."

We think the proof was insufficient to justify the Chancellor in giving a decree for the defendants and cross-complainants; hence the judgment of the court below will be reversed, and judgment rendered here, holding that the complainants were entitled to cancellation of the claim of the defendants, and cancelling same.

Reversed and rendered.