662

McLendon *v.* Laird.

Division B. May 14, 1951.

No. 37959 (52 So. (2d) 497)

L. S. McClaren and Brady & Roberts, for appellants.

664

Livingston & Livingston, and Brunini, Everett, Gran-
tham & Quin, for appellee.

**Roberds, P. J.**

The question for decision herein is whether a deed executed by John Laird to his sister, Mrs. Lucile McLendon, and his nephew, Robert McLendon, was, or was not, delivered. The chancellor found there was no delivery and Robert McLendon appeals.

The question is grounded in these circumstances: The deed is dated February 17, 1937, and it was signed and acknowledged on that day. By its terms it conveyed to Mrs. Lucile McLendon and Robert McLendon as tenants in common 160 acres of land, which constituted the homestead of the grantor, and to Robert McLendon certain personal property, the grantor reserving unto himself "a life estate in all the above described real and personal

property, with the right to control and occupy said property during his natural life." Apparently the wife of the grantor had died a short time prior to the execution of the deed. He was then a widower.

It is contended by appellant that Laird then delivered this deed to the grantees by placing it in the possession of Mr. R. C. Williams, Sr., cashier of the Bank of Blountville, located at Prentiss, Mississippi, as the agent of the grantees, to be by Williams physically handed over to the grantees upon the death of the grantor. Mr. Williams was placed upon the stand as a witness for the petitioner, Robert McLendon. He testified that he had been connected with said bank for thirty-one years. The bank had no safety deposit boxes, but it did keep in its vault files having upon them the letters of the alphabet, and customers were at liberty to place their papers and documents in the vault for safekeeping. These papers would usually be placed in this file under the first letter of the surname of the customer, as for instance, papers of Laird would be under the letter "L". He said the officials of the bank did not know what these papers and documents were; that the customers brought them in, took them out, and added to them at their pleasure, without the bank having knowledge of their identity. No charge was made for this service; it was purely an accommodation to the customers of the bank. As to the deed in question, it was found to be in an envelope with the following notation, written upon a typewriter, upon the envelope: "PRIVATE. Deed of Mr. John Laird to certain farm lands to be filed for record upon the death of Mr. Laird." Mr. Williams testified this had been in the bank some seven to ten years before the death of Mr. Laird on April 14, 1949. He did not know whether it had been taken out and brought back, or another substituted, in the meantime. He had no recollection as to when Mr. Laird brought it in. Mr. Laird gave him no instructions about it and apparently never discussed it with him. He also said that Mr. Laird had a good many other papers

in the bank, such as government bonds, his will, etc. All these, including the deed in question, were kept together. They were placed in the bank for safekeeping just like the other papers of the customers. Mr. Laird was a director in the bank. Williams said Mr. Laird had entire control of these papers. He was asked

"So there was absolutely nothing in relation to the papers kept for Mr. Laird that was any different from those you kept for other customers of the bank? A. None whatever.

"Q. These papers of Mr. Laird's that were kept at the Bank were at all times considered to be the property and private papers of Mr. Laird? A. Yes, sir.

"Q. Further than that, the Bank and you yourself did not undertake to determine what was in those papers? A. No, sir . . .

"Q. And at no time did Mr. Laird give you any specific instructions about any of these particular papers insofar as keeping them for any other purpose other than safekeeping for him? A. None whatever . . .

"Q. As to this particular instrument in that envelope to which you have referred, the envelope is marked Exhibit A, you were given at no time any specific instructions about that envelope? A. No, sir."

He was asked whether Mr. Laird at any time ". . . ever authorized you directly or in any other manner that you know of to deliver this envelope or any of the contents of that envelope to Mr. Robert McLendon or Mrs. Lucile McLendon or anybody else", and he replied "No, sir." It might be noted that there is no proof as to who wrote upon the envelope the foregoing quoted words. From the wording they were apparently written by someone other than Mr. Laird. The wording is not in the first person. He then said he did not know what was in the envelope until after the death of Mr. Laird. He learned of the contents when he carried this envelope, with bonds and other papers, to the administratrix of the estate of Mr. Laird, and delivered all of them to

the administratrix and the chancery clerk, at the office of the chancery clerk.

While Williams was the only witness who testified, other facts, admitted by the pleadings or agreed to by counsel, have a bearing upon the question under consideration. These are: After the execution of the deed in question February 17, 1937, Mrs. McLendon, one of the grantees, died. The exact date of her death is not shown. Also, on October 16, 1937, Mr. John Laird remarried, the name of the lady being Ida Stamps. On November 13, 1937, Mr. Laird executed his will. He bequeathed to his wife, Ida Stamps Laird, eight shares of stock in the Bank of Blountville. All of the rest of his property, real and personal, he devised and bequeathed to Robert McLendon and Ida Stamps Laird, share and share alike, after providing for payment of his debts and the erection of a monument to his grave. He nominated his wife, Ida Laird, executrix. On January 22, 1944, John Laird executed to his said wife a warranty deed to the same one hundred and sixty acres of land described in the deed to Mrs. Lucile McLendon and Robert McLendon. This deed was filed for record the date of its execution, and had been on record some four and a half years before the death of Mr. Laird on April 14, 1949. On April 25, 1949, his wife was appointed administratrix of his estate, she, as alleged in a pleading, being of the opinion the will had been revoked. Mr. Williams had testified he assisted Mr. Laird in the purchase of certain government bonds. A list of the bonds left by him appears in the record. The dates extend over the period from October, 1941, to June 1944. There are twenty-one bonds. The total of E-Bonds is $7,000; the total of G-Bonds is $4,300. All of these bonds stand in the name John Laird and others jointly, except two in his name alone. Three of the bonds, for one thousand dollars each, were taken in the joint names of John Laird and Robert McLendon. Two, for one thousand dollars each, were in John Laird and Ida Laird; three

bonds, for lesser amounts, were held jointly with each Robert L. Robertson, Miss Rachael McLendon, James D. Loflin, Mrs. Rachael M. Moore, and two with Horatio G. Laird. Upon the death of John Laird, these jointly held bonds became the property of the respective joint surviving owners thereof with Mr. Laird, except it appears that Horatio Laird predeceased John Laird, and, therefore, the Horatio Laird bonds, upon his death, became the sole property of John Laird and he owned these, together with the two standing in his sole name, at the time of his death, and, under his will, they became the property of Robert McLendon and Mrs. Ida Laird. On December 6, 1949, by agreement of the parties hereto, the chancery court, by decree, admitted to probate the foregoing will of John Laird, and Mrs. Laird was appointed executrix therein. On the same day, she made her final report as administratrix, saying that under the circumstances she had not taken possession of any of the personal property of John Laird. It appears that the foregoing government bonds constituted the entire personal estate of John Laird, deceased. And on December 6, 1949, she was discharged as administratrix. All of the pleadings and proceedings with reference to probation of the will, the appointment of administratrix, her discharge, etc., and those pertaining to the contest over delivery of the deed of John Laird to Mrs. Lucile McLendon and Robert McLendon appear to have been filed in the same cause and under the same number in the lower court, but no question is presented on this appeal with reference to the will. The sole question here is whether the McLendon deed was delivered.

Certain legal rules, applicable to this situation, are well established. It is well to here mention them. ▉ ▉ The burden of proving delivery of this deed was upon appellant. Barner v. Lehr, 190 Miss. 77, 199 So. 273; Wilbourn v. Wilbourn, 204 Miss. 206, 37 So. (2d) 256, 775. ▉ ▉ It was necessary that the deed be delivered to Williams with instructions, assented to by him, to

deliver it to the grantees upon death of the grantor, and under such circumstances as that the grantor lost all right to regain or in any manner control, or make other disposition, of the instrument—in other words, under such conditions as that Williams then became the agent of the grantees. 16 Am. Jur. 519, Section 145; Barner v. Lehr, supra; Palmer v. Riggs, 197 Miss. 256, 19 So. (2d) 807; Ladner v. Moran, 190 Miss. 826, 1 So. (2d) 781. Now, as to the instructions to Williams: The proof by him is that he was given no instructions; Laird never mentioned to him the matter of holding this deed and delivering it to the grantees upon the death of Laird. Williams did not know when the deed was left at the bank. Certainly there was no personal direction from Laird to Williams to deliver this deed. Williams never agreed to carry out any such instructions. He was placed upon the stand by appellant and was asked by appellant's attorney whether Laird had the right to get this deed at any time and he emphatically said he did have the right. That is not conclusive but it is persuasive. Even the wording on the envelope does not show that Laird had lost control of the deed. He called this deed his "private" paper. Too, he placed it with his other private papers under his own name. It, with his other papers, was placed in the bank vault, according to the testimony on behalf of appellant, for safekeeping. There is no evidence whatever that Williams received this deed with instructions to keep and deliver it, or that he assented to any such arrangement. He did not even know when it was brought to the bank nor did he know what was in the envelope until after the death of Mr. Laird. In addition to this, the subsequent acts of Mr. Laird with reference to his property—the execution of a will in which he made provision for Robert McLendon, along with the testator's wife; the later execution by him of a warranty deed conveying the same land to his wife, his acquisition of government bonds, a part of which he took in the name of himself and Robert McLendon

jointly—all clearly show it was not his intention to have this deed delivered, and especially is that true in view of the fact that shortly after its execution Mrs. Lucile McLendon, his sister, one of the grantees in the deed, had died. The chancellor was amply supported in his finding that the deed in question was never delivered.

But appellant takes the position, as we understand it, that this is not a proceeding to test the validity of the title but to require the clerk to receive and record the deed. It is difficult to see how that could be done, conceding the limited scope of the proceeding, since the clerk is not a party thereto. The only party is Mrs. Laird, as administratrix. Appellant instituted the proceeding and he asked only that the deed be received by the clerk and recorded upon the land deed records. He prayed that process issue ''. . . to the administratrix, Mrs. Ida Laird, commanding her to appear before this Honorable Court at such time and place as to the court may appear proper, either in term time or in vacation, and that upon such hearing, said Mrs. Ida Laird be required to show cause, if any she can, why said deed executed by John Laird, now deceased, dated February 17, 1937, herein referred to, should not be filed for record and recorded on the land records . . .'' of the county, and that, ''by proper order'', the court require the clerk to receive and record the deed. Mrs. Laird answered (apparently as an individual and not as administratrix) saying the instrument should not be received and recorded by the clerk, it being a mere scrap of paper, a writing of no validity; that it was not a deed and not entitled to be recorded, because it had never been delivered. ▮▮ The evidence was all directed to the issue of delivery or no delivery of the deed. The chancellor decreed ''. . . that there had been no valid, legal delivery of the alleged deed of February 17, 1937, the court does thereby find that said petition of the said Robert McLendon to have said deed filed and

recorded should be dismissed.'' Appellant presented the issue and the court decided it as presented.

We simply decide the issue as made, that is, whether there was a delivery of the deed, and hold that the chancellor was amply justified in finding it was never delivered. What the result is, or whether the parties hereto, or others not parties to this proceeding, can or should take further action, is not for us to say. This Court is not empowered to deliver advisory opinions.

Affirmed.