MASTICS, ADMR., ET, PLAINTIFF, *v.* KIRALY ET, DEFENDANTS.

Probate Court, Cuyahoga County.

No. 643410.   Decided February 3, 1964.

194

*Mr. A. A. Mastics*, for plaintiff.

*Mr. Nicholas Major*, for certain defendants residing in Hungary.

*Mr. Steven W. Kormendy*, for defendant, Retreat House of St. John of Capistran.

*Mr. James S. Gallas*, assistant attorney general, for defendant, State of Ohio.

*Mr. Nicholas Major*, for Guardian ad Litem for Zsuzsa Tarkanyi and Katalin Tarkanyi.

ANDREWS, CHIEF REFEREE. This is an action to construe the will of Sandor Tarkanyi, who died on October 31, 1957, domiciled in Miskolc, Hungary. On January 28, 1958, A. A. Mastics was appointed ancillary administrator of the estate, subject to the furnishing of a bond, which apparently he did on February 3, 1958. On February 18, 1963, a foreign will, executed by Sandor Tarkanyi, was admitted to record under the provisions of Section 2129.07, Revised Code. On June 15, 1963, this action was brought. Subsequently, in accordance with Section 2113.20, Revised Code, the Probate Court revoked the letters of administration and appointed Mr. Mastics as ancillary administrator with the will annexed. In this new capacity he was substituted as plaintiff in the present action.

Plaintiff seeks a declaratory judgment answering several questions set forth in the petition.

For an understanding of the problems involved, it is necessary to go back to the will of Sandor Tarkanyi's brother, Bela Tarkany. (The slight difference in spelling is of no significance in this action.)

Bela, domiciled in Cleveland, Ohio, died on November 26, 1945. In his will, dated November 8, 1945, he made the following provision for his brother, Sandor;

"I give and devise to my brother, Sandor of Miskolc, Hungary, should I still be the owner and have the right to dispose of same at the time of my decease, my real property located at 2949 East 116th Street in the City of Cleveland, Ohio, and my real property located at 11424 Buckeye Road in the City of Cleveland, Ohio, subject to any encumbrances thereon."

Bela left no surviving spouse. His next of kin, all living in Hungary, were, in addition to Sandor, a sister, Sari, another brother, Istvan, and other relatives not necessary to enumerate.

Bela's will contained a specific devise of another parcel

of Cleveland real estate to his sister, Sari, and the proceeds of certain life insurance policies to Ida W. Mastics of Lakewood, Ohio. By Item V the residue of Bela's estate, including lapsed and void legacies and devises, was left to Ida W. Mastics.

Prior to Bela's death, he sold the property located at 2949 East 116th Street. This resulted in an ademption of the devise of this property to Sandor. *Lewis v. Thompson*, 142 Ohio St., 338, 52 N. E. (2d), 331 (1943); *Gordon v. Bartlett*, 62 Ohio App., 295, 23 N. E. (2d), 694 (1938); *Darlington v. Dillon*, 63 Ohio App., 197, 16 Ohio Opinions, 479, 30 Ohio Law Abs., 188, 25 N. E. (2d), 859 (1939); Atkinson, Wills 743 (2d ed., 1953); 6 Bowe-Parker, Page on Wills Sec. 54.7, p. 252 (1962); 6 Powell, Real Property, 551 (1958); Richie, Alford, and Effland, Cases on Decedents' Estates and Trusts, 742 (1961), the last named giving the following illuminating example: "Suppose a testator makes a specific devise of 'Blackacre' to X in his will. Testator then sells 'Blackacre.' The devise is said to be adeemed."

Section 2107.36, Revised Code, entitled "Effect of alteration of property," has no bearing on the situation where the testator *sells* the real estate specifically devised. *Lewis v. Thompson, supra.*

It is interesting to note that the language of the will itself, as previously set forth, expressly provides for an ademption. The devises to Sandor contain the condition, "should I still be the owner and have the right to dispose of same at the time of my decease."

Inasmuch as the devise to Sandor of the property located at 2949 East 116th Street was adeemed, he never became the owner of that property.

With reference to the property located at 11424 Buckeye Road, it appears from the fifth partial account of the executor of Bela's estate that on or about April 16, 1950, this property was transferred to Sandor in accordance with Bela's will. The order of the Probate Court confirming the transfer was dated May 8, 1950.

From the partial accounts of the executor, it also appears that close to $4,000 was collected in rentals on the Buckeye Road property between the date of Bela's death and the transfer of the property to Sandor.

The final account of the executor, dated November 8, 1954, showed a distribution to Sandor Tarkanyi of $4,010.95, deposited in a blocked account with The National City Bank of Cleveland. The funds were blocked under federal law by reason of Sandor's residence in Hungary.

Sandor Tarkanyi executed his last will and testament on September 4, 1957, at Miskolc, Hungary, and, as already noted, he died on October 31, 1957.

The following provisions of Sandor's will, as translated from the Hungarian, are pertinent at this point.

"1. In accordance with the enclosed deed of gift I presented my house property in Cleveland /U. S. A./ East 116 St. No. 2949 during my lifetime yet, to the retreat house St. John of Capistran of the Franciscan order, DeWitt, Michigan, U. S. A., commissioning the Rev. Clement Kiraly O. F. M. Hickory Street Flint 6, Michigan, superior of the retreat house, to execute this will of mine. Should this deed of gift not have been realized till my death, by any reason whatever, I leave the above property to the above mentioned institution by the strength of the present will.

"2. My personal estate arisen out of the income from my above house property and deposited with the National City of Cleveland Bank amounts to * * * $7,791.53."

The will then lists other funds, and totals these funds plus the amount in the "National City of Cleveland Bank" as $8,-541.53.

The next sentence of the will reads:

"Concerning the distribution of this amount I dispose as follows: * * *

"I leave * * *."

Here the testator lists a large number of pecuniary bequests, some with directions attached. At the end of the list he gives the total as $8,541.53.

He then provides:

"All further income from my above mentioned house, not mentioned here, are left to the Franciscan Order, to cover the arising fees and other costs."

The will does not include a residuary clause.

The first and most difficult problem raised in plaintiff's

petition, and designated as "A," arises from the fact that in his will, the testator refers to "my house property in Cleveland /U. S. A./" as "East 116 St. No. 2949," whereas, in fact, he never owned the property at 2949 East 116th Street, but did, in fact, own the property at 11424 Buckeye Road, and had owned it for several years before making his will. It was the only property which he owned in Cleveland, or, for that matter, anywhere else in the United States, and it had a single-family frame dwelling house on it, as well as a one-story storage or commercial building. Moreover, rents had been received from it, which would tie in with Sandor's reference to his personal estate "arisen out of the income from my above house property."

It does not take a magnifying glass to see that Sandor Tarkanyi intended to devise the property which he owned in Cleveland, and that, in some way, he became confused with reference to the two parcels devised to him in Bela's will, and, by mistake, described the wrong one. Is the devise nevertheless effective or does the Buckeye property descend as intestate property?

In the first place it is clear that a court cannot insert into the will "11424 Buckeye Road" as a substitute for "East 116 St. No. 2949." A will cannot be reformed, nor can words be added to it. 1 Bowe-Parker, Page on Wills, Sec. 13.7, p. 672 (1960); id. Sec. 13.8, p. 678; *Koelmel* v. *Kaelin*, 374 Ill., 204, 29 N. E. (2d), 106 (1940); *Pate* v. *Bushong*, 161 Ind., 533, 69 N. E., 291 (1903); *Eckford* v. *Eckford*, 91 Iowa, 54, 58 N. W., 1093 (1894); *Barner* v. *Lehr*, 190 Miss., 77, 199 So., 273 (1940); *Will of Boeck*, 160 Wis., 577, 152 N. W., 155 (1915). Messrs. Bowe and Parker state the reason as follows:

"* * * for to allow such matter to be probated would fly in the face of the requirement that a will must be in writing and must be executed with certain formalities." 1 Bowe-Parker, Page on Wills, Sec. 13.7, p. 672 (1960).

Mr. Wigmore gives the following example:

"* * * Hence, if a devise is of 'my white house at No. 19 Cedar Street,' and it is proposed to show that the word 'white' was by mistake inserted for 'green,' this proposal must be rejected as improper." 9 Wigmore, Evidence, Sec. 2476, p. 254 (3d ed., 1940).

However, there is an equally well-settled principle of law which in no way conflicts with the rule against reforming a will. The principle is based upon the Latin maxim, *"falsa demonstratio non nocet,"* meaning "Mere false description does not make an instrument inoperative." 35 C. J. Sec. 613 (1960). The principle or rule, based upon the maxim, has been stated over and over again by the courts. I will quote from two opinions, each of which gives an excellent statement of the rule.

In *Eckford* v. *Eckford,* 91 Iowa, 54, 58 N. W., 1093 (1894), the court said:

"* * * But there is another principle applicable to the facts of this case which is fundamental, that a false description of real estate in a will can not defeat the devise if, after rejecting the false description, there is a sufficient designation or description of the subject of the devise to lead to an identification of the land in controversy."

And from paragraph one of the syllabus in *Moreland* v. *Brady,* 8 Oreg., 303 (1880):

"* * * *Falsa demonstratio non nocet* has become a thoroughly established maxim of the law, the practical meaning of which is that however many errors there may be in the description either of the legatee or of the subject-matter of the devise, it will not avoid the bequest, provided enough remains to show with reasonable certainty the intent of the devisor. Extraneous oral evidence is admissible to show the state and extent of the testator's property at the time the will was executed, in order that the court may be placed in the position of the testator at the time and be able to read the will in the light of the surrounding circumstances."

Ohio has long recognized the doctrine. *Ashworth* v. *Carleton,* 12 Ohio St., 381 (1861); *Banning* v. *Banning,* 12 Ohio St., 437 (1861); *Merrick* v. *Merrick,* 37 Ohio St., 126 (1881); *Gillis* v. *Long,* 8 Ohio N. P. (N. S.), 1, 19 Ohio Dec., 253 (Com. Pl. 1908). These cases will be referred to later in more detail.

As pointed out in 4 Bowe-Parker, Page on Wills, Sec. 33.16 (1961):

"* * * The difficulty in applying this general principle consists in determining what is a sufficiently definite description of the property which testator intends to devise, after the erroneous part of the description has been stricken out."

The cases are legion, and to refer to any substantial number of them would unduly lengthen this opinion. Many of them are cited in the footnotes to Sections 33.16, 33.17, and 33.18 of volume 4 of Bowe-Parker, Page on Wills (1961).

As intimated in Section 33.17 of Bowe-Parker, supra, a decision is much simpler where the realty is described in two ways, one of which is correct and sufficient if standing alone, and the other of which is erroneous. The principal trouble is found where there is no sufficient description of the property by reference to its location or its ownership and the like, outside of the description which is in part erroneous. 4 Bowe-Parker, supra, Sec. 33.18. A good example of this latter type of case is *McGovern* v. *McGovern,* 75 Minn., 314, 77 N. W., 970 (1899), where the will purported to devise the northeast quarter of a certain section of land. The testator did not own the northeast quarter, but owned the southeast quarter of the section, and no other land. In holding that the devise was ineffectual to pass the southeast quarter, the court pointed out that if the false description was rejected as surplusage, there was no description whatever remaining by which the land intended to be devised could be identified.

*Barner* v. *Lehr,* 190 Miss., 77, 199 So., 273 (1940), is another example. There the testator devised lot 7, section 3, township 21 north, range 3 west. The court refused to allow evidence to show that range 3 was erroneous, and that range 4 was intended. Testator owned a parcel answering the above description in range 4, but not in range 3. The court emphasized that there was nothing in the will to so aid the description as to authorize the court to find that the land involved was within the terms of the will, or to enable it to locate the land from the will itself.

Similarly, in *Sherwood* v. *Sherwood,* 45 Wis., 357 (1878), the testator devised lot 9 in block 20, city of Oshkosh. It was alleged that he did not own lot 9, but did own lot 10, which was the only lot he owned in block 20. The matter arose on demurrer. The court held that the demurrer should have been sustained. The following quotation from the opinion gives a good idea of what courts are driving at in these cases. Said the court:

"We are now to determine whether there is any provision

or clause in the will under consideration, from which, when considered in the light of the surrounding circumstances, the court can say that it contains a devise to the plaintiff of lot 10. Inasmuch as the question arises on demurrer to the complaint, we have no knowledge of the contents of the will beyond what is stated in the complaint. It is averred therein that, by mistake, lot 9 is the lot described in the will instead of lot 10, and that the testator 'made no other mention or description of lot 10, or of any lot of land in said Block 20, except as herein stated.' Thus it is substantially alleged that the only designation or description in the will of the lot devised to the plaintiff is 'lot 9.' Hence there is nothing in the will upon which to predicate a construction that lot 10 was therein devised to her.''

The immediately subsequent language of the opinion brings out graphically the essential distinction between the cases upholding devises containing misdescriptions of property and those invalidating them. I continue the quotation:

''It might be otherwise had the testator inserted in his will any other description or identification of the lot which he intended to devise to the plaintiff. For instance, had he devised to her 'lot 9 in block 20, occupied by A'; or, 'which I purchased of B'; or even '*my* lot 9 in block 20,' and had it appeared that lot 10 alone was occupied by A, or that the testator purchased lot 10 alone of B, or that lot 10 was the only lot owned by the testator in block 20, in either case extrinsic evidence would be admissible to show that fact; and if established, the court would be justified in construing the will as containing a devise to the plaintiff of lot 10. This does not contravene the rule which rejects extrinsic evidence of the intention of the testator when offered to vary or add to a will; for in either of the cases above supposed, the will itself contains two inconsistent descriptions of the lot devised, the one true and the other false; and the court would merely resort to extrinsic evidence to ascertain which was the true description, and would construe the will accordingly. This is but an application of the familiar maxim, *falsa demonstratio non nocet*, sanctioned by all of the authorities. Nearly all of the cases cited by the learned counsel for the plaintiff sustain these views.''

Reference to a few of the many cases upholding the par-

ticular devise will further serve to illustrate the distinction set forth in *Sherwood* v. *Sherwood, supra.*

In *Board of Trustees* v. *May*, 201 Mo., 360, 99 S. W., 1093 (1907), testatrix devised to a named beneficiary, "My Kansas City property on Olive street, No. 705 and 1489 * * *." Parol evidence was admitted to show that at the time the will was executed and at the time of her death, she did not own the lots designated in her will, but did own lots 1705 and 1914, which constituted the only property which she owned on Olive Street. After rejecting the erroneous description, there was left "My Kansas City property on Olive Street," which was sufficient to pass the two pieces of property which testatrix owned on Olive Street.

In *Winkley* v. *Kaime*, 32 N. H., 268 (1855), testator devised "thirty-six acres, more or less, in lot 37 in the 2d division in Barnstead, being same I purchased of John Peavey." Evidence was admitted to show that there was no lot 37 in the second division, but that there was a lot 97 in that division, a part of which the testator had purchased from John Peavey, and of which the testator died seized. In holding that this was a case for the application of the maxim previously referred to, the court noted that after rejecting the false description, namely, "in lot 37," there remained, "thirty-six acres, more or less, in 2d division in Barnstead, being same I purchased of John Peavey." The court said:

"The extrinsic evidence thus manifestly shows what must have been the intention of the testator, and both upon the doctrine of the authorities and the justice of the case, we think the devise should be made to take effect."

In *Holmes* v. *Roddy*, 176 Tenn., 624, 144 S. W. (2d), 788 (1940), the testator owned numerous parcels of real estate in Chattanooga. The first sentence of his will stated: "I * * * do herewith make my last Testament regarding the disposal, after my decease, of all the real and personal property now owned by me as follows." A subsequent portion of the will recited that all the real estate mentioned in the will lay in Chattanooga, except two houses and lots in Roseville, Georgia. The several parcels were devised to various relatives and friends. To a Mrs. Holmes he left "the property known as 3608 Third Avenue." The bill averred that he did not own

3608 Third Avenue, but did own 3607, and that this was the only property he owned on Third Avenue when he made the will and at the time of his death. The court held that the will was effective to pass 3607. The opinion calls attention to the fact that the testator declared his purpose to dispose of all his real and personal property, and that the will stated that except for two parcels, all his real property was in Chattanooga. Also, notes the opinion, the will showed testator's intention of disposing of his property on Third Avenue. Says the court:

"Had he devised the Third Avenue property, describing it merely as the property or my property on Third Avenue without more, there is no doubt but that parol proof would have been admissible to show that he owned 3607 Third Avenue, and such devise would have been good."

The court then referred to the maxim *falsa demonstratio non nocet* and held, consistently with the quoted passage, that it applied to this case.

A few of the multitude of cases holding the same way in analogous situations are: *Patch* v. *White*, 117 U. S., 210 (1885); *Allen* v. *Lyons*, 2 Wash. C. C., 475, Fed. Cas. No. 227 (1811); *Albury* v. *Albury*, 63 Fla., 329, 58 So., 190 (1912); *Koelmel* v. *Kaelin*, 374 Ill., 204, 79 N. E. (2d), 106 (1940); *Hoefling* v. *Borsen*, 190 Iowa, 645, 180 N. W., 750 (1921); *Old Ladies Home* v. *Cooper*, 206 Miss., 508, 40 S. (2d), 268 (1949); *Thomson* v. *Thomson*, 115 Mo., 56, 21 S. W., 1085, 1128 (1892); Will of Boeck, 160 Wis., 577, 152 N. W., 155 (1915).

If we pause for a minute and look back to Sandor Tarkanyi's will in the light of the authorities, the solution is clear. Rejecting the erroneous description "East 116 St. No. 2949," we have left "my house property in Cleveland /U. S. A./," and a reference to the fact that he has received income from the property. His only property in Cleveland, U. S. A., and the only property in Cleveland, U. S. A., from which he has received income, is the property which came to him under the will of his brother, Bela, namely, the property at 11424 Buckeye Road. In the words of the quotation from *Eckford* v. *Eckford, supra,* when the false description is rejected, "there is a sufficient designation or description of the subject of the devise to lead to an identification of the land in controversy."

How stands Ohio on the matter?

The maxim *falsa demonstratio non nocet* is recognized in *Ashworth* v. *Carleton*, 12 Ohio St., 381 (1861), and there is a rather extended discussion of cases from other states. However, the decision turned upon the point that the record which came to the Supreme Court was insufficient to enable the court to decide the question presented. Because of the paucity of the record, the court affirmed the district court and the trial court, which had admitted evidence to show a mistake in the will with reference to the township number of the land devised. Not even the whole will was exhibited in the record.

*Banning* v. *Banning*, 12 Ohio St., 437 (1861), likewise recognizes the doctrine, and applies it to a case where the will devised "The Click farm, so called," followed by a superadded inaccurate description. The court upheld the devise, declaring that there was a sufficient description, under which the extent of the devise could have been readily identified, and that the superadded inaccurate description would not vitiate the devise.

The first paragraph of the syllabus in *Merrick* v. *Merrick*, 37 Ohio St., 126 (1881), announces the rule which governs in the present case. It reads as follows:

"Where property is devised by two descriptions, either of which is sufficient in form, but it is shown that one of them is erroneous and the other correct, the former should be rejected, and the property will pass by the latter description, according to the maxim, *Falsa demonstratio non nocet.*"

In the *Merrick case*, the testator devised to his wife for life, "All the * * *real estate I may die seized of." He owned 160 acres of land, one-half of which was in section 27, and the other half in section 28. The half in section 28 was the east half of the *north*-east quarter. His will provided that upon the death of his wife, his property in section 27, correctly described, should go to his son *C*, charged with certain legacies. In the description of the remainder devised to his son *D* after the death of the testator's widow, which devise was also charged with certain legacies, a mistake was made, in that the property was described as the east half of the *South*-east quarter. The testator had no interest in this property. The court held that under the doctrine set forth in the first paragraph of the sylla-

bus, the will effectively devised to *D* the east half of the northeast quarter of section 28. Among other things, the opinion, at page 131, states the following:

"* * * and, rejecting the erroneous description, the word *south*, sufficient appears on the face of the will, in the light of the facts here disclosed, to warrant us in saying that by the will of Adam Merrick the other moiety, the east half of the northeast quarter of section 28, Hoaglin township, Van Wert county, passes to Adam R. Merrick on the death of his mother."

*Gillis* v. *Gillis*, 8 Ohio N. P. (N. S.), 1, 19 Ohio Dec. (N. P.), 253 (Com. Pl. 1908), contains an outstanding opinion by Judge Killits. At page 27 of 8 Ohio N. P. (N. S.), it is noted that on appeal, the judgment was affirmed on the basis of the opinion by the court below. It appears also to have been affirmed without opinion by the Supreme Court in 82 Ohio St., 411, 92 N. E., 1119 (1910), under the name of *Long* v. *Long*.

The *Gillis case* is an example of a situation where, after rejecting the false or erroneous description, nothing remains leading to an identification of the property claimed to have been the intended subject of the devise. Judge Killits points out, at page 9, that "the slightest means of identification may be seized upon to avoid intestacy after discarding the erroneous description." He refers to *Eckford* v. *Eckford*, 91 Iowa, 54, 58 N. W., 1093 (1894), as a case wherein the court found that a claim of ownership recited in the will was sufficient to validate the devise. On the importance of words of ownership contained in the will, see also *Cleveland* v. *Spilman*, 25 Ind., 95 (1865); *Holmes* v. *Roddy*, 176 Tenn., 624, 144 S. W. (2d), 788 (1940); *Sherwood* v. *Sherwood*, 45 Wis., 357 (1878); 9 Wigmore, Evidence, Secs. 2476, 2477 (3d ed. 1940). Sandor Tarkanyi's will refers to "*my* house property." (Emphasis added.) But of course the will also contains further words localizing and identifying the property.

Later in the *Gillis* opinion, Judge Killits states that an examination of the cases upholding the devise "will show that the instrument contained some shred of thought, after rejecting the words which were inapplicable to the property, from which, aided by extrinsic facts, might be gained a reference to the right premises * * *"

Sandor Tarkanyi's will contains far more than "some shred of thought." The words of the will remaining after striking the erroneous description lead unerringly, with the aid of competent extrinsic evidence, to the property at 11424 Buckeye Road. I hold that Sandor Tarkanyi's will effectively devises that property to the devisee named in the will.

Question B relates to the bequests enumerated in the will. Counsel erroneously calls these "specific" bequests, whereas in fact they are "general" bequests. However, the misnomer is of no significance under the particular circumstances.

The bequests add up to $8,541.53. In some instances the legatee is charged with certain duties in connection with the bequest. Plaintiff states that if the Buckeye Road devise is held to be valid, there will not be enough cash and personal assets to pay the bequests in full. He asks whether, if the funds are thus insufficient, the bequests should be abated or reduced, on a pro rata basis. The answer is that they should be. In other words, if, for example, the fund left for payment of the legacies is eighty per cent of the total amount of the legacies, each legatee should receive eighty per cent of his legacy. See Section 2107.54, Revised Code. Although technically the law of Hungary, the testator's domicile, governs the distribution of personal property, the rule of abatement prescribed by the Ohio statute is so eminently fair that in the absence of proof of the Hungarian law, I will be guided by it.

The last item in the list of legacies is "For the expenses of the executor of my will, $200.00," and this refers to a named Hungarian executor and to an administration in Hungary. Inasmuch as there was no administration in Hungary, and thus no "expenses" arose therefrom, this item is of no effect, and the amount should be added to the funds available for distribution to the other legatees.

With reference to Question C, counsel have agreed that under the existing circumstances the question is not pertinent to the present proceeding.

In view of my decision on Question A, Question D has become moot.

In Question E, plaintiff requests authority to sell the Buckeye Road property because of the deterioration of the neighborhood and for other reasons. Because of my decision that the

devise is effective and that the property must be conveyed to the devisee, it is clear that land sale proceedings are not in order.

Question F concerns a matter of distribution. Plaintiff points out that there has not been, and presumably will not be, any administration in Hungary, as there are no assets in Hungary. Furthermore, for that reason the executor named in the will has not been appointed. Moreover, he no longer resides in Miskolc, where all or most of the beneficiaries live. Under these circumstances, plaintiff asks whether he should pay over the net proceeds to the executor in Hungary at his present residence or should make distribution directly to the legatees, subject to the blocking provisions of the Trading with the Enemy Act and Executive Order No. 8389.

Section 2129.23, Revised Code, gives the court discretion as to whether to send the balance remaining after payment of all debts and expenses as therein enumerated to the domiciliary administrator or executor or to deliver it to the persons entitled thereto. At an informal hearing held in this action, all counsel apparently agreed that the balance should be delivered to the persons entitled thereto. Indeed, since there is no administration of the estate in Hungary, it is difficult to see how the court could do otherwise, and I so hold.

*Conclusions of Law*

1. The devise to the Retreat House of Capistran of the Franciscan Order, DeWitt, Michigan, although containing an erroneous description of the property, is nevertheless valid and effective, and the devisee is entitled to a conveyance of the property known as 11424 Buckeye Road, Cleveland, Ohio.

2. If there are not sufficient funds after payment of debts and expenses of administration to pay the pecuniary legacies in full, they shall abate pro rata as provided by Section 2107.54, Revised Code. In this connection, the item "For the expenses of the executor of my will, $200.00," which refers to a Hungarian executor and administration, is of no effect, and should be deleted from the list of legacies. The amount of this item, $200.00, should be added to the funds available for distribution to the other legatees in case the remaining funds, as anticipated, are insufficient to pay all the legacies in full.

3. Because, as already decided, the property at 11424 Buckeye Road passes under the will to the named devisee, land sale proceedings are not in order.

4. Distribution of the pecuniary legacies, as abated, should not be made to the Hungarian executor named in the testator's will, but should be made directly to the legatees, subject to the blocking provisions of the Trading with the Enemy Act and Executive Order No. 8389, and any other provisions bearing on the matter.