511 So.2d 492 (1987)
Patricia Brasell ROSS
v.
Leslie Banks BRASELL and William Michael Brasell.
No. 56776.
Supreme Court of Mississippi.
August 12, 1987.
*493 Ann H. Lamar, Lamar & Lamar, Senatobia, for appellant.
Briggs Smith, Smith, Phillips & Mitchell, Batesville, for appellee.
Before HAWKINS, P.J., and ROBERTSON and ANDERSON, JJ.
ANDERSON, Justice, for the Court:
This is an appeal from the Chancery Court of Panola County wherein the chancellor denied appellant's motion to compel an inventory of the estates of Juanita Banks Brasell and Leslie W. Brasell.
The Brasell family owned considerable property, including the John Deere dealership in Batesville and a 1,400 acre agricultural enterprise named Brasell Farms, Inc. Leslie W. Brasell and his wife Juanita Banks Brasell began planning their estate in 1975 with the aid of their lawyer, Robert Riser. At that time, both Mr. and Mrs. Brasell owned stock in Brasell Farms, Inc.; they decided to resell their stock to the corporation. At a meeting of the board on December 30, 1975, Mr. and Mrs. Brasell offered their shares to the corporation. They agreed to accept the corporation's note in exchange for their shares at an interest rate of 6% to be paid at the $501 per month. On January 6, 1976, the notes were executed separately in the amount of $77,000 each to Mr. and Mrs. Brasell.
On May 26, 1977, the Brasells executed separate wills. Juanita Banks Brasell died on October 24, 1980. Her widower, Leslie, was executor of her will, but died himself on October 13, 1982. His sons, Leslie Banks Brasell and William Michael Brasell, were appointed joint executors of Mr. Brasell's will. They were also appointed administrators de bonis non for the will of Mrs. Brasell. Leslie Banks Brasell, William Michael Brasell and Patricia Brasell Ross, the children of the couple, were the sole beneficiaries under both wills. Patricia filed a petition for inventory of both wills. Leslie Banks and William compiled the inventories, but Patricia objected to their approval and filed a motion to compel a perfect inventory of both estates. The joint administrators countered with a petition asking the chancellor to construe certain provisions of the will of Juanita Banks Brasell.
There are two points of controversy between Patricia and the joint administrators. One concerns whether or not Juanita Brasell owned certain silverware at the time of her death. Item III in the will of Juanita *494 Banks Brasell states: "I give and bequeath unto my husband Leslie W. Brasell a life estate in and to all my personal effects and household goods, with remainder in fee simple absolute to my daughter, Patricia Brasell Ross." In controversy are eight place settings of Rosepoint silver which were in possession of Juanita's granddaughter, Michelle Brasell at the time of Juanita's death. Patricia contends that this silver should have been included in the estate inventory and consequently should have passed to her when Leslie Brasell's life estate terminated with his death. The joint executors, on the other hand, contend that Mrs. Brasell made a gift of the silverware to Michelle before her death.
The second item of controversy in the wills concerns promissory notes. Item II of Juanita's will states: "I give and bequeath unto my sons, Leslie Banks Brasell and William Michael Brasell in equal shares such promissory note or notes from them with any accumulated interest thereon due and not paid." Item II of Leslie Brasell's will states: "I give and bequeath unto my sons Leslie Banks Brasell and William Michael Brasell in equal shares such promissory note or notes from them with any accrued interest which I may hold at the time of my death." The joint executors take the position that the promissory notes referred to in the wills are the two promissory notes executed by Brasell Farms, Inc. in 1976 and exchanged for the resale of the elder Brasells' stock to the corporation. Patricia on the other hand argues that since the wills refer to promissory notes "from them" this does not include the promissory notes executed by the corporation.
In the matter of the silverware, the chancellor, after hearing testimony found that there had been a valid gift inter vivos from Juanita to her granddaughter. As to the matter of the promissory notes, the chancellor, (over the appellant's objections), admitted parol evidence to determine the testators' intent. After hearing the testimony of Riser, the lawyer who helped prepare the wills, he concluded that the testators had meant to bequeath those promissory notes from Brassel Farms, Inc. that were executed in their favor in exchange for the resale of their stock to the corporation.

LAW

I. Did the chancellor err in admitting parol evidence to determine the intent of the testators?
It is the rule in Mississippi, as elsewhere, that if the terms of a will are ambiguous, parol evidence may be admitted to determine the intent of the testator. E.g., Tinnin v. First Bank of Mississippi, 502 So.2d 659, 670 (Miss. 1987); Maupin v. Estate of Perry, 396 So.2d 613, 615 (Miss. 1981); Strickland v. Delta Investment Co., 163 Miss. 772, 781, 137 So. 734, 736 (1931). However, if the will is unambiguous and the intent of the testator can be discerned from the face of the document, the admission of such evidence is improper. E.g., Stovall v. Stovall, 360 So.2d 679, 681 (Miss. 1978); Seal v. Seal, 312 So.2d 19, 21 (Miss. 1975); In re Estate of Granberry, 310 So.2d 708, 710-12 (Miss. 1975)
The chancellor allowed the attorney Riser to testify in support of the appellee's contention that the Brasells meant to include the promissory notes executed to them in exchange for their stock in the bequest referring to "promissory notes." Patricia, on appeal, takes the position that since both wills refer to promissory notes "from them" [i.e., from the joint executors] and the promissory notes in question were executed not by the brothers as individuals, but by the corporation, the wills are not ambiguous as to those promissory notes. Patricia contends that whatever promissory notes were intended by the wills did not encompass the promissory notes from the stock transaction since these notes were not "from them." Brasell Farms, Inc. was a closely held corporation in which all stock was held by family members.
Patricia further argues that even if the will were ambiguous, the chancellor did not make an explicit finding of ambiguity; she contends this is an absolute prerequisite for the admission of any parol evidence. Seal v. Seal, 312 So.2d 19, 21 (Miss. 1975).
*495 This is true, but it is also true that where a chancellor does not make explicit findings, this Court on appeal will assume that all disputed issues were resolved in favor of the appellees. This is so even in cases where the chancellor's findings "left much to be desired." Bryant v. Cameron, 473 So.2d 174, 179 (Miss. 1985). This Court has recognized that a chancellor may make an implicit as well as explicit finding. Spain v. Holland, 483 So.2d 318, 320 (Miss. 1986); Dungan v. Dick Moore, Inc., 463 So.2d 1094, 1100 (Miss. 1985); In re Enlargement of Boundaries of Yazoo City, 452 So.2d 837, 842 (Miss. 1984). In the present case the chancellor's action in admitting the parol evidence makes no sense unless he had come to the conclusion that the will was in fact ambiguous.
Where a will disposes of property, by a definite description, parol evidence is not admissible to contradict or vary that description. Barner v. Lehr, 190 Miss. 77, 199 So. 273 (1941). On the other hand, where the language of the will could apply to more than one item of property, parol evidence is admissible to determine which property the testator intended to bequeath. Carlisle v. Carlisle's Estate, 252 So.2d 894 (Miss. 1971); Welch v. Welch, 147 Miss. 728, 113 So. 197 (1927). The question in the present case is whether or not the inclusion of the phrase "from them" makes the description of the promissory notes definite enough to exclude the notes executed by the corporation.
In practice, Mississippi has tended to be liberal in the admission of such evidence, even where the document on its face appears unambiguous. An excellent example is the case of Maupin v. Est. of Perry, 396 So.2d 613 (Miss. 1981). This involved a will whose residuary clause specified that the testator's surviving nieces and nephews would be beneficiaries. At the time of his death, the testator was survived by one nephew. His last niece died eighteen years previously. The testator was fully aware of that fact. When the will was probated, a dispute arose as to whether or not greatnieces and great-nephews were intended to be included under the residuary clause. The chancellor pronounced the residuary clause ambiguous and employed rules of construction in determining the testator's true intent. This Court held that he had not erred in pronouncing the will ambiguous, but that he had "erred in its resolution by giving literal construction to the word `nephew' thereby limiting the devise to that person. The ambiguity arises from the uncertainty of designating the intended recipients." 396 So.2d at 615.
In effect, this Court held that the surrounding circumstances created ambiguity in the will, despite the apparent clarity of the word "nephew." In this case, the chancellor had not admitted parol evidence to establish the testator's intent, so this Court ruled that the residuary clause was void and the property concerned must descend according to the intestacy statute.
This Court has long recognized that parol evidence is admissible to show the surrounding circumstances where that is necessary to establish the testator's true intent. Keeley v. Adams, 149 Miss. 201, 115 So. 344 (1928). Of special interest is the case of Byrd v. Henderson, 139 Miss. 140, 104 So. 100 (1925). Byrd involved a will which devised all the testator's property to his wife "and her heirs". A dispute arose as to whether or not the testator had intended to include heirs other than children. This Court held it was permissible to use parol evidence of surrounding circumstances to ascertain whether the testator used the word "heirs" in its technical sense or in the sense of children. 139 Miss. at 156-57, 115 So. at 102.
In the present case, we think that the technical significance of the phrase "from them" should not serve to prevent the chancellor from considering parol evidence necessary to establish the true intent of the testator. This accords best with the necessity of establishing the testators' intent and to construe wills so as to "avoid a clearly unintended consequence." Tinnin v. First Bank of Mississippi, 502 So.2d 659, 669 (Miss. 1987); Est. of Bunch v. Heirs of Bunch, 485 So.2d 284, (Miss. 1986).
*496 The chancellor's finding not being manifestly wrong, we will not disturb it on appeal.

II: Did the chancellor err in finding a valid gift inter vivos?
Our leading case on gifts inter vivos is Matter of Collier, 381 So.2d 1338 (Miss. 1980). When it is shown that one party has title to certain property and another party claims that property by virtue of a gift from the owner, the party asserting the gift bears the burden of proof; the quantum of proof is "clear and satisfactory proof." 381 So.2d at 1341. In order for there to be a valid gift inter vivos the following elements must be present: (1) a donor competent to make a gift, (2) a voluntary act of the donor with donative intent, (3) the gift must be complete with nothing else to be done, (4) there must be delivery to the donee, and (5) the gift must be irrevocable. See, e.g., Matter of Collier, 381 So.2d at 1340; Thomas v. Eubanks, 358 So.2d 709 (Miss. 1978); Longtin v. Witcher, 352 So.2d 808 (Miss. 1977).
In the present case, the decisive issue is whether or not the last of these requisites was fulfilled. There is dispute as to the degree of control Mrs. Brasell retained over the silverware in the months before her death. Lorene Perkins, the maid, testified that Mrs. Brasell "gave" the silverware to Michelle, but on cross she gave testimony indicating that when the elder Brasells went to Florida they customarily left the silverware at Michelle's house. Therefore the maid's testimony did not prove that Mrs. Brasell "gave" the silverware to Michelle irrevocably in the sense of a gift. Other testimony on this issue was given by Mike Brasell. He testified that he did not consider the silver part of his mother's estate because "mother's wishes were to give it to my daughter Michelle. She gave it to my daughter Michelle." However, he also said that "up until the time mother died, that silverware was in my house, but mother had control over it... . I felt like the silver belonged to my daughter, but I had enough respect for my mother that I would do whatever she told me to do with it."
Thus, the only testimony given about the silverware, did not establish by clear or convincing evidence or otherwise that Mrs. Brasell had relinquished control over the silverware and made the gift irrevocable. Since that is an indispensible element of a gift inter vivos, the chancellor was manifestly wrong in finding that Mrs. Brasell had made that silverware the subject of a gift to Michelle before her death. The silver should have been made a part of the inventory of Mrs. Brasell's estate.

CONCLUSION
The decree of the chancellor is affirmed as to the promissory notes, but reversed as to the silverware. The case is remanded so that the chancellor can order an inventory of the estate consistent with our opinion.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN, and GRIFFIN, JJ., concur.